**Joe WOODS, Plaintiff–Appellant,**

v.

**Michael O'LEARY, et al.,
Defendants–Appellees.**

**No. 88–3104.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 7, 1989.

Decided Nov. 16, 1989.

David R. Herzog, Layfer, Cohen & Handelsman, Chicago, Ill., for Joe Woods, plaintiff-appellant.

Respicio F. Vazquez, Vincent J. O'Brien, William D. Frazier, Asst. Attys. Gen., Chicago, Ill., for Michael O'Leary, Willia J. Adlworth, Mail Room Supervisor, S.C.C., James E. Dixon, Administrative Asst. to Warden, S.C.C., defendants-appellees.

Before FLAUM, RIPPLE, and MANION, Circuit Judges.

FLAUM, Circuit Judge.

This appeal arises from the grant of summary judgment in favor of defendants in an action under 42 U.S.C. § 1983 brought by plaintiff-appellant Joe Woods, an inmate then incarcerated at Stateville Correctional Center, against defendants, Stateville officials, Michael O'Leary, et al. In the district court, Joe Woods alleged in Count I that defendants intentionally failed to post and deliver Woods' mail, and in Count II that defendants violated his right to freedom of religion under the first and fourteenth amendments by refusing to allow his mailings. Woods appeals Count II, but does not appeal Count I. In Count II, the district court granted defendants' motion for summary judgment on the ground that Illinois Department of Correction Regulation 445.30, Ill.Admin.Code tit. 20, § 445.30 (1985), was valid and its application to Woods was reasonably related to legitimate penological interests.

Woods argues on appeal that (1) the prison officials infringed his first amendment rights by applying Illinois Department of Correction Regulation 445.30 to his Universal Life Church activities and (2) that summary judgment was improper since there exists a genuine issue of material fact as to whether the Universal Life Church is a bona fide religious organization or a business venture. For the reasons stated in this opinion, we affirm the district court's grant of summary judgment on Count II.

## I.

Appellant Joe Woods was incarcerated at Stateville Correctional Center, Joliet, Illinois, during the events of this case. While at Stateville, Woods along with two other inmates, all of whom were ministers of the Universal Life Church ("ULC"), attempted to establish a ULC congregation at the prison.

Michael O'Leary, the Chief Administrative Officer at Stateville, prevented the appellant's attempted ULC mailings which Woods claims violated his first amendment right to the free exercise of religion. The mailings were denied pursuant to Illinois Department of Correction Regulation 445.-30 ("the Regulation") on the grounds that Woods was attempting to operate an inmate run business venture. O'Leary based his decision, in part, on the denial of tax exempt status to the ULC by the Internal Revenue Service.

O'Leary notified Woods of his finding and required Woods to comply with the Regulation by filing a proposal notifying the warden as to:

1) type of business; 2) service or product to be provided; 3) anticipated mail volume; 4) date the business is to begin; and 5) whether the service or product will be offered or sold to other inmates or state employees.

Ill.Admin.Code tit. 20, § 445.30 (1985).

O'Leary further stated to Woods that any attempt by him to mail ULC correspondence would be prohibited until such information was provided and the venture was authorized by the warden.

Woods responded by unsuccessfully attempting to persuade O'Leary that the ULC was still entitled to tax exempt status. O'Leary subsequently restated in a memorandum that a proposal was necessary and a failure to file one would make Woods' attempted mailings an unauthorized activity. Woods disregarded this memorandum and received a disciplinary ticket for attempting to mail numerous pieces of ULC correspondence.

Woods then filed this action under 42 U.S.C. § 1983, alleging in Count I, that defendants intentionally failed to post and deliver Woods' mail, and in Count II that defendants violated his right to freedom of religion under the first and fourteenth amendments. The district court granted summary judgment on both counts for the defendants. Only Count II is under appeal.

## II.

The analysis of Woods' claims must begin with the constitutionality of Illinois Department of Correction Regulation 445.30. The Regulation is clearly secular, since it addresses inmate run business ventures, and has only an indirect affect on religion. As such, the facial validity of the Regulation is not disputed by either party. Rather, it is the application of the Regulation by prison officials to Woods that allegedly violates his right to the free exercise of religion.

We first note that it is well established by the United States Supreme Court that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987); *see also Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). In fact, "[i]nmates clearly retain protections afforded by the First Amendment ..., including its directive that no law shall prohibit the free exercise of religion." *O'Lone*, 482 U.S. at 348, 107 S.Ct. at 2404. However, "challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125, 97 S.Ct. 2532, 2538, 53 L.Ed.2d 629 (1977) (quoting *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974)). The examination the Supreme Court has determined we must undertake is, therefore, one of balancing prisoners' first amendment rights against the goals of the correctional facility. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct.

1861, 60 L.Ed.2d 447 (1979); *Hadi v. Horn,* 830 F.2d 779 (7th Cir.1987).

Against these constitutional protections, we note that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnson,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). Thus, "to ensure that courts afford appropriate deference to prison officials," the Supreme Court has determined "that prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone,* 482 U.S. at 349, 107 S.Ct. at 2404. The Supreme Court held this standard of review "avoids unnecessary intrusion of the judiciary into problems particularly ill-suited to 'resolution by decree.'" *O'Lone,* 482 U.S. at 349–50, 107 S.Ct. at 2405 (quoting *Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974)).

The correct standard to be applied in balancing a prisoner's constitutional rights was more recently clarified in *Turner v. Safley,* 482 U.S. 78, 87, 107 S.Ct. 2254, 2260, 96 L.Ed.2d 64 (1987), where the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Thus, it has now been settled by the Supreme Court that we must examine Woods' claim of a violation of his first amendment right under a legitimate penological interests analysis.

This circuit in *Hadi v. Horn,* 830 F.2d 779 (7th Cir.1987), adopted and summarized the relevant factors for consideration under the *Turner* analysis. These factors include:

(1) whether a valid, rational connection exists between the regulation and a legitimate government interest behind the rule; (2) whether there are alternative means of exercising the right in question that remain available to prisoners; (3) the impact accommodation of the assert-

ed constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) although the regulation need not satisfy a least restrictive alternative test, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable.

*Hadi,* 830 F.2d at 784 (citing *Turner,* 482 U.S. at 89–90, 107 S.Ct. at 2262).

Applying the *Hadi* factors to Woods' free exercise claim, we note that it is not necessary for us to decide whether or not the ULC is a bona fide religion. The mere fact that the ULC may be a religion does not remove any venture Woods wishes to engage in from the prison officials' scrutiny. Generally, all religions are subject to some regulations and all religions at various times engage in some form of business ventures. Thus, the determination of whether the ULC is a religion is not a material issue of fact. The ULC, no matter how it is characterized, is still subject to prison regulations. The only issue remaining for us to consider, therefore, is the reasonableness of the application of the Regulation to Woods. Assuming that the ULC may constitute a religion, as did the district court, we now analyze that court's finding that "[t]he regulation is reasonably related to the legitimate penological interest of prison security" under the *Hadi* factors.

The application of the first *Hadi* factor requires a facial determination of whether a rational connection exists between the Regulation and a legitimate government interest. This Regulation requires information be provided to prison officials concerning the volume of mail anticipated by an inmate run business venture. The Regulation is intended to consider the numerous security implications caused by increased prison mail volume. These security considerations include, *inter alia,* increases in the costs of mail monitoring, decreases in the amount of personnel available for other security purposes, and the potential overburdening of the mail system and its negative impact on other inmates' mail. With all these prison interests under

consideration, it cannot be seriously disputed that there is a logical connection between the Regulation and legitimate governmental interests put forward to justify it.

Additionally, we note that it was reasonable for the prison officials to apply the Regulation to Woods. Woods initially proposed the sending out of over fifty pieces of mail, each expecting a response of contributions or ULC paraphernalia. This proposed activity and its inherent security risks are legitimate government interests that justify application of the Regulation.

Beyond these justifications, we find it was also reasonable for the prison administrators to rely on the I.R.S. denial of tax exempt status to the ULC in deciding to apply the Regulation to Woods. See *Universal Life Church, Inc. v. United States*, 13 Cl.Ct. 567 (1987) (discussing the ULC as a non tax-exempt organization). Woods' attempts to find fault with the defendants reliance on the I.R.S. for their decision; however, his concern is misplaced and the issue is not dispositive. The Regulation, if it satisfies the *Hadi* factors, and we find that it does, may be applied to any religion that undertakes a commercial venture. The determination by the I.R.S. merely reenforced the officials' belief that the ULC operates business ventures. Prison administrators are in the position of running prisons and not in determining the validity of a religion or its activities. And, although the I.R.S. is also not an overseer of religious activity, it is the agency in charge of determining the tax exempt status of all organizations. As such, the I.R.S. had to make such a determination as to whether the ULC was really a commercial endeavor. In this instance, the officials' reliance on the I.R.S. merely confirmed their belief that Woods was attempting to run a business. Thus, when any religion is found to be operating a commercial enterprise in the prison it may be subject to this Regulation. Accordingly, even if the ULC is a genuine faith, it was reasonable for the prison officials to rely on this I.R.S. decision as a factor in their

conclusion that Woods' activities are an attempt to operate an inmate run business.

Also relevant to this first factor is "whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression." *Turner*, 482 U.S. at 90, 107 S.Ct. at 2262. There is no evidence in the record for us to conclude that the Regulation was applied in any way other than neutrally. Therefore, it appears that this Regulation would be applied to all religions in the prison that attempted business ventures.

Based on the foregoing analysis, it is apparent that the Regulation satisfies the first prong of the *Hadi* test. A valid, rational connection exists between the Regulation and a legitimate government interest, i.e., the impact of an inmate run business on the security and mail system of the prison.

The second prong of the *Hadi* test is also satisfied. Woods was not prohibited from alternative means of exercising his religious beliefs. The Regulation merely requires the filing of a proposal providing information on the anticipated mail volume. Woods was informed of the requirement and refused to file the proposal. Without complying with this Regulation, it is not possible for Woods to complain of the denial of his ability to exercise his religious beliefs. The prison's refusal to allow Woods' mailings was a direct result of his noncompliance with the Regulation. Without the requested information, prison officials could not adequately evaluate the impact the attempted venture may have on the prison. In fact, Woods may very well have been granted the right to send his ULC correspondence if he filed the requested proposal. Therefore, the alternative of using the mails in exercise of his faith is still available to Woods. *See Childs v. Duckworth*, 705 F.2d 915, 921 (7th Cir. 1983) (denial of inmate's request for organized satanic religious meetings was justified where inmate never provided name of sponsor and information on the organization's proposed activities as required by prison regulation).

Additionally, Woods and every religious group need only be afforded "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). "What constitutes 'a reasonable opportunity' must be evaluated in light of prison officials' interest in security." *Childs,* 705 F.2d at 920 (quoting *Pell v. Procunier,* 417 U.S. at 822, 94 S.Ct. at 2804). Requiring the proposal to be filed before the mailings were allowed surely provided Woods with a reasonable opportunity to pursue his faith. All that was required by Woods was mere compliance. Also, as previously noted, there is no evidence that this Regulation was applied in any way other than neutrally. Therefore, Woods' opportunity to pursue his religion was not encumbered more than any other prisoners' opportunity to pursue their religion. Without complying with the Regulation, Woods' reasonable opportunity to pursue his religious affiliation was limited only by what the prison officials decided was in the prison's security interest.

Also related to prong two, the record establishes that appellants are not deprived of all forms of religious exercise, but rather are free to practice their religion. In *O'Lone,* the Court asserted that whether the "inmates were deprived of 'all means of expression'" was an important consideration in measuring the reasonableness of the Regulation. *O'Lone,* 482 U.S. at 352, 107 S.Ct. at 2406 (quoting *Turner,* 482 U.S. at 92, 107 S.Ct. at 2263). Woods is only restricted from using the mails until he meets the filing requirements. The Regulation does not prevent Woods the right to congregate for prayer or discussion or his participation in other ULC religious observances. The ability of Woods to still form a congregation and practice his faith leads us to conclude that the Regulation at issue did not prohibit Woods from exercising an alternative means of practicing his religious beliefs. *See O'Lone,* 482 U.S. at 351–52, 107 S.Ct. at 2405–06.

Considering the third prong of *Hadi,* it is difficult to believe that accommodating Woods' increased mail volume would not affect guards and other inmates. In *Turner,* the Court held that "[w]hen accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner,* 482 U.S. at 90, 107 S.Ct. at 2262. The proposed increase in mail will affect the prison in many ways as discussed earlier. Therefore, the record firmly supports, and we accept, the prison officials' concern that accommodation of Woods' attempted mailings without the ability to evaluate the impact on the prison could have undesirable results on the prison.

Finally, the prison officials' actions satisfy the fourth prong of the *Hadi* test. We must give deference to the district court's factual finding that "Woods has failed to suggest any less restrictive alternatives." *Woods v. O'Leary,* No. 85–C–8451 (N.D.Ill. Oct. 4, 1988) (1988 WL 105358, 105363). Without any suggestion by Woods, prison officials need not "set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner,* 482 U.S. at 90–91, 107 S.Ct. at 2262. The Court in *O'Lone* reasserted this statement of deferential review by holding: "[t]hough the availability of accommodations is relevant to the reasonableness inquiry, ... placing the burden on prison officials to disprove the availability of alternatives, ... fails to reflect the respect and deference that the United States Constitution allows for the judgment of prison administrators." *O'Lone,* 482 U.S. at 350, 107 S.Ct. at 2405. Without the benefit of alternatives suggested by Woods, or the filing of the requested proposal, we find that it was reasonable for the prison officials to deny Woods' mailings.

### III.

For the foregoing reasons, we hold that the restrictions on Woods' mailings were actions in compliance with Illinois Department of Correction Regulation 445.30. In addition, we find that the Regulation satis-

fies all four prongs of the *Turner* and *Hadi* test. As such, application of the Regulation was reasonably related to the legitimate penological interests of prison security and did not violate Woods' first amendment right to the free exercise of religion. Accordingly, the judgment of the district court is

AFFIRMED.