945 F.2d 770
 57 Empl. Prac. Dec. P 41,096
 Carrie YOUNG-HENDERSON, Plaintiff-Appellant,
v.
SPARTANBURG AREA MENTAL HEALTH CENTER; Anne S. Willis,
former Assistant Director; Anita Stoddard,
Assistant Director; William S. Powell,
M.D., Director, Defendants-Appellees.
 No. 90-1797.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 7, 1991.
Decided Sept. 20, 1991.
 
 Napoleon B. Williams, Jr., New York City, argued (Julius L. Chambers, Charles S. Ralston, Eric Schnapper, on brief), for plaintiff-appellant.
 Elizabeth Leigh Mullikin, Haynsworth, Baldwin, Johnson & Greaves, P.A., Columbia, S.C., argued (Thomas A. Bright, Greenville, S.C., on brief), for defendants-appellees.
 Before SPROUSE, Circuit Judge, and DUPREE, Senior District Judge for the Eastern District of North Carolina, sitting by designation, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 SPROUSE, Circuit Judge:
 
 
 1
 Carrie Young-Henderson brought this action against her former employer, the Spartanburg Area Mental Health Center ("the Center") and various individuals alleging violations of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq.; 42 U.S.C. § 1981; 42 U.S.C. § 1983; and the first and fourteenth amendments. This appeal is from the district court's order granting summary judgment in favor of the Center; Dr. William S. Powell, the director of the Center; Anne S. Willis, former assistant director of the Center; and from the court's subsequent directed verdict on a first amendment claim in favor of Anita Stoddard, assistant director of the Center. The district court initially held that all claims other than the first amendment claim against Stoddard were barred by res judicata. After subsequent proceedings, the court found that Young-Henderson failed to establish the first amendment claim against Stoddard. We affirm in part and reverse in part.I
 
 
 2
 Carrie Young-Henderson, a black woman, first began employment as a psychologist at the Spartanburg Area Mental Health Center, a community mental health program in Spartanburg, South Carolina, on April 27, 1979. Throughout her employment, Young-Henderson was allegedly denied several promotions due to her race and sex and was subjected to numerous discriminatory and retaliatory disciplinary actions including discharge on January 3, 1984. After filing a grievance, Young-Henderson was reinstated on February 6, 1984, with back pay. In April 1984, she filed a complaint with the South Carolina Human Affairs Commission alleging discriminatory suspension, discharge, failure to promote, and retaliatory disciplinary action. The Equal Employment Opportunity Commission ("EEOC") granted her a Right to Sue Notice on July 31, 1985.
 
 
 3
 On October 28, 1985, Young-Henderson filed suit against the South Carolina Department of Mental Health ("DMH"), Powell, Willis, and Bomar Edmonds, the Center's Special Services Coordinator, alleging race and sex discrimination in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, and the fourteenth amendment. (Henderson I ) The alleged discriminatory treatment included unlawful discharge during the January to February 1984 period, suspension, failure to promote, and retaliatory disciplinary actions. The complaint also included claims of discriminatory hiring and recruitment practices by the Center.
 
 
 4
 In February 1986, while Henderson I was pending, Young-Henderson was issued two concurrent three-day suspensions. While the defendants contend these suspensions were for alleged insubordination and disruption of normal Center operations, Young-Henderson alleges she was suspended as a result of her September 1985 meeting with the local chapter of the National Association for the Advancement of Colored People ("NAACP") and subsequent posting of an article about civil rights activist Reverend Jesse Jackson on a bulletin board at the Center. On March 12, 1986, while Henderson I was still pending, Young-Henderson was terminated for abandonment of position due to sick leave absences throughout the previous month.
 
 
 5
 The district court granted partial summary judgment for the defendants on some claims on August 3, 1986. Specifically, the order dismissed the § 1981 and § 1983 claims against the DMH on the ground of eleventh amendment sovereign immunity; it also dismissed the Title VII claim against defendants Powell and Willis because Young-Henderson had failed to name them in her EEOC complaint.[1] While the court dismissed Young-Henderson's discriminatory recruitment and hiring claims for lack of standing and limited the federal claims to the granting of prospective injunctive relief, the court reserved judgment on Young-Henderson's motion to amend her complaint to add a claim for intentional infliction of emotional harm.
 
 
 6
 Subsequently, the parties settled their dispute and entered into a Consent Order of Dismissal, adopted by the court below on September 24, 1986. The Consent Order provides:
 
 
 7
 It is hereby stipulated and agreed by the parties, through their respective attorneys, that the above-entitled action be, and the same is dismissed with prejudice. It is further agreed that this Order of Dismissal only terminates the claims raised in the complaint in the above-entitled action and does not in any way affect any other charges or claims filed by the Plaintiff subsequent to the commencement of this within [sic] action.
 
 
 8
 More than two years later, the complaint in the current action (Henderson II ) was filed on January 9, 1989, and amended on May 3, 1989, against the Center, Powell, Willis, and Stoddard, who had apparently become assistant director of the Center in the interim. The complaint in Henderson II again alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.; 42 U.S.C. § 1981; 42 U.S.C. § 1983; and the first and fourteenth amendments. Upon defendants' motion for summary judgment on the grounds of res judicata, Young-Henderson conceded that all claims arising prior to October 28, 1985 (the date the complaint was filed in Henderson I ) were barred, but she opposed the motion for summary judgment as it pertained to the harassment and retaliatory incidents which occurred after the complaint was filed as well as her suspension and termination in 1986.
 
 
 9
 In granting summary judgment on April 6, 1990, the court found persuasive the defendants' contentions that all of the claims raised for the first time in the 1989 action "might have been litigated" in the earlier case, as the new claims existed six months before final judgment was rendered on September 24, 1986. It also held that the harassment and 1986 discharge issues were litigated in the previous action because Young-Henderson referred to them in an answer to defendants' interrogatories presented in Henderson I.[2]
 
 
 10
 With respect to the first amendment claims, the court held that the issue of whether these claims were barred by Henderson I was moot in light of Young-Henderson's concession that all claims against the original defendants prior to October 28, 1985, were barred. However, the court found that the first amendment claim against Stoddard in her individual capacity survived the motion for summary judgment, because Stoddard was not named as a defendant in Henderson I. A jury trial was held on June 4 and 5, 1990, on the first amendment claim against Stoddard. At the close of Young-Henderson's evidence, the district court entered a directed verdict in favor of Stoddard, finding she had not sufficiently established that either the posting of the Jesse Jackson article or Young-Henderson's political beliefs were the proximate cause of her dismissal.
 
 
 11
 On appeal, Young-Henderson contends the court erred in holding that the Consent Order in Henderson I was res judicata with respect to claims arising after the complaint's filing date. She also contests the directed verdict on the first amendment claim in favor of Stoddard.
 
 
 12
 We find no error in the court's direction of a verdict in favor of Stoddard on the first amendment claim. We agree that Young-Henderson simply failed to present any evidence that she suffered suspension as a result of her meeting with the NAACP or posting an article about Jesse Jackson on the Center's bulletin board. In our view, however, the district court erred in granting summary judgment to the defendants based on its finding that the issues raised in Henderson II were precluded because they were or could have been litigated in Henderson I.
 
 II
 
 13
 "Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). It is well established in this circuit that the application of res judicata requires a showing of the following three elements: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." Nash County Bd. of Educ. v. Biltmore Co., 640 F.2d 484, 486 (4th Cir.), cert. denied, 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981).
 
 
 14
 There is no question that the Consent Order of 1986 operated as a final judgment on the merits. See Keith v. Aldridge, 900 F.2d 736, 740 (4th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 257, 112 L.Ed.2d 215 (1990). Nor, with the exception of the first amendment claim against Stoddard in her individual capacity, is there any question concerning the identities of the relevant parties. Therefore, the element at issue in this appeal concerns the "identity of the cause of action in both the earlier and later suit" or, perhaps more accurately, whether by the terms of the Consent Order the parties waived any preclusive effect that the final judgment granted in Henderson I otherwise would have had.
 
 
 15
 The alleged discrimination in the Henderson I complaint related to the defendants' refusal to promote Young-Henderson and their actions in disciplining, suspending, and eventually discharging her in 1984--of course all claims were based on conduct which occurred prior to the date she filed the Henderson I complaint. While the complaint in Henderson II realleged these claims, it also alleged additional unlawful conduct. Henderson II added charges of retaliatory harassment for filing EEOC charges and for bringing the Henderson I lawsuit. The Henderson II complaint additionally alleged discrimination in the form of the March 12, 1986, termination for abandonment of position following a period of sick leave for which she provided a doctor's pass. Finally, the Henderson II complaint alleged that her first amendment rights were violated when she was suspended in February 1986 because she met with the NAACP and posted an article about Jesse Jackson.
 
 
 16
 In Keith, we held that two causes of action are the same if "the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." Keith, 900 F.2d at 740. However, our normal focus on the identity of a subsequent cause of action with a previously asserted one in resolving preclusive issues is diverted here by the impact of the Consent Order entered in Henderson I. While we doubt that the Keith standard was intended to preclude claims that could not have been brought at the time the first complaint was filed,[3] we need not reach that issue because the Consent Order itself indicates an intent to preclude only those claims actually alleged in the earlier complaint. "When a consent judgment entered upon settlement of the parties of an earlier suit is invoked by a defendant as preclusive of a later action, the preclusive effect of the earlier judgment is determined by the intent of the parties." Keith, 900 F.2d at 740.
 
 
 17
 The course of litigation is determined, for the most part, by the actions of the litigants. Any proper analysis of the preclusive effect of court orders must keep that principle in mind. "Since a principal purpose of the general rule of res judicata is to protect the defendant from the burden of relitigating the same claim in different suits, consent, 'in express words or otherwise,' to the splitting of the claim prevents the defendant from invoking claim preclusion." Keith, 900 F.2d at 740 (citing Restatement (Second) of Judgments § 26(1)(a), comment a). The preclusive effect of the Consent Order is determined by the intent of the parties which is, in turn, determined by application of contract interpretation principles. Keith, 900 F.2d at 741.
 
 
 18
 By the terms of the Consent Order here, the parties and the court below agreed that it would "only terminate[ ] the claims raised in the complaint [and that the Consent Order would] not in any way affect any other charges or claims filed by the Plaintiff subsequent to the commencement of this ... action." Fairly interpreted, the Consent Order manifests an intent to preclude only those claims that were raised in the complaint in Henderson I. It does not manifest an intent to preclude claims which could have been brought but were not, and it does not manifest an intent to preclude claims which did not arise until after the complaint was filed. If the parties intended to preclude all claims that could have been brought at the time the Henderson I complaint was filed, or if they wished to preclude claims that might have arisen after the complaint was filed, they surely could have worded the Consent Order to achieve that effect.[4] We conclude that, because of the language of the Consent Order, the doctrine of res judicata operates to preclude only those claims that were raised in the Henderson I complaint.
 
 
 19
 The district court relied on Boyer v. W.R. Grace & Co., 706 F.Supp. 17 (D.S.C.1989), for the proposition that a settlement agreement reached between parties does not affect the operation of claim preclusion. However, we find this suggestion inconsistent with our recognition in Keith that "[c]laim preclusion will not apply ... if the parties intended to settle only one part of a single claim and intended to leave another part open for future litigation." Keith, 900 at 740-41. Not only does the Consent Order itself limit its preclusive effect to only those claims appearing in the complaint, see 18 Wright, Miller, & Cooper, supra § 4443, at 387 ("Preclusion is most apt to be denied as to new claims that are found not to lie within the terms of the settlement ..."), but it also does not appear from the record that the claims raised in Henderson II were taken into account in negotiating the Consent Order, a consideration other courts have considered relevant in assessing the preclusive effect of a settlement agreement. See, e.g., Goldman v. Northrop Corp., 603 F.2d 106, 109 (9th Cir.1979).
 
 
 20
 Finally, we find unpersuasive appellees' contention that although claims arising from subsequent harassment and the 1986 termination were not actually alleged in the Henderson I complaint, Young-Henderson's reference to them in her response to appellees' interrogatories implied an amendment to that complaint. It is true that in her March 26, 1986, response to defendants' First Set of Interrogatories, Young-Henderson included the February 1986 suspension and March 1986 termination, as well as the warnings received and disciplinary actions taken against her before Henderson I was filed. However, the interrogatory did not ask Young-Henderson what claims she intended to assert; instead, it merely asked her "to enumerate the warnings and employment discipline received by her while employed at the Center and to explain why she believed the discipline was because of her race, sex, or opposition to race or sex discrimination." This honest response to an interrogatory was not sufficient to assert a legal claim. As a general rule, facts accruing after the suit is brought may not be inserted by way of amendment but must be added by supplemental pleading. See Fed.R.Civ.P. 15(d). Particularly fatal to appellees' argument is the rule that supplemental pleadings require leave of court. See 6A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 1504 (1990). Thus, we find the claims of retaliatory and discriminatory harassment, discipline, and discharge occurring since October 28, 1985, remain viable.
 
 
 21
 In view of the above, the district court's directed verdict in favor of Stoddard on the first amendment claim is affirmed and its grant of summary judgment is reversed.
 
 
 22
 AFFIRMED IN PART; REVERSED IN PART.
 
 
 
 [1]
 Although the EEOC complaint explicitly named only the Spartanburg Area Mental Health Center as respondent, the court found an allusion to Edmonds in the body of the EEOC complaint sufficient to preclude dismissal of Edmonds on this ground
 
 
 [2]
 By consent of the parties this case had been referred to a magistrate judge. The district court also rejected Young-Henderson's argument that the court not consider the magistrate judge's recommendations in light of his denial of requested legal representation at a hearing
 
 
 [3]
 See 18 C. Wright, A. Miller, and E. Cooper, Federal Practice and Procedure § 4409, at 76 (1981) ("Most cases assume that an action need include only the portions of the claim due at the time of commencing that action."); Spiegel v. Continental Illinois National Bank, 790 F.2d 638, 644-46 (7th Cir.) cert. denied, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986) (second action barred by claim preclusion except as to matters occurring after first action was filed); Los Angeles Branch NAACP v. Los Angeles Unified School Dist., 750 F.2d 731, 739 (9th Cir.1984), cert. denied, 474 U.S. 919, 106 S.Ct. 247, 88 L.Ed.2d 256 (1985), ("[T]he rule that a judgment is conclusive as to every matter that might have been litigated does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated.")
 
 
 [4]
 The settlement agreement in Keith, for example, provided that "[t]he Air Force was released from, and the agreement recognized as a full and complete disposition of, those claims 'that were filed or that could have been filed (except attorney's fees) and that were brought or could have been brought against the [Air Force] pursuant to Title VII and the provisions of the Privacy Act.' " Keith, 900 F.2d at 739