1 F.3d 1244
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Taajwar K. RASHEED-BEY, Plaintiff/Appellant,
v.
James E. AIKEN,[1] Jack Duckworth, and Indiana
Attorney General, Defendants/Appellees.
 No. 91-3769.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 9, 1993.*
Decided Aug. 3, 1993.
 
 Before BAUER, Chief Judge, and CUDAHY, and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Taajwar K. Rasheed-Bey, an inmate of the Indiana State Prison, appeals the district court's grant of defendants' motion for summary judgment in this civil rights action. Rasheed-Bey alleges that as a member of the Moorish Science Temple of America, a Muslim sect, he was denied his First Amendment right to freely practice his religion while incarcerated. Rasheed-Bey further alleges that the defendants discriminated against this sect while according proper recognition to a different Muslim sect within the prison. We affirm the district court.
 
 I. BACKGROUND
 
 2
 Taajwar K. Rasheed-Bey is a member of the Moorish Science Temple of America ("MST"). On September 4, 1984, he filed a civil rights complaint pursuant to 42 U.S.C. Sec. 1983, alleging that the defendants, officials of the Indiana Department of Correction, had deprived him of his First and Fourteenth Amendment right to exercise his religious beliefs in accordance with the mandates of the particular Muslim sect to which he belongs.[2] He claimed that he and other members of MST had in 1981 petitioned Jack R. Duckworth, then Superintendent of the Indiana State Prison, for recognition as a separate Muslim sect, appropriate accommodation of its particular rituals, and recognition of their right to possess religious artifacts and receive religious literature. Rasheed-Bey alleged that at the time he filed his complaint, Superintendent Duckworth and Gordon H. Faulkner, acting under the advice of the Indiana Attorney General, had persisted in refusing their requests. He also claimed that the defendants had improperly grouped MST with another Muslim sect, the American Muslim Mission, in a consent decree that had been part of the settlement in another lawsuit,[3] contending that the prison officials' decision to grant recognition to the American Muslim Mission while denying recognition to the MST was discriminatory. Rasheed-Bey sought declaratory and injunctive relief and damages.
 
 
 3
 In their answer to Rasheed-Bey's complaint, the defendants asserted the affirmative defense of res judicata on the ground that Rasheed-Bey was complaining about the outcome of the previous lawsuit, James v. Lash, despite the fact that he was a member of the plaintiff class in that action and had participated in drafting a procedure for accommodating the religious practices of all Mulsims in the Indiana State Prison. That procedure, known as Standard Operating Procedure # 605, became a central part of the consent decree in the settlement of the James case. Counsel was appointed to represent Rasheed-Bey, and Rasheed-Bey's deposition was taken. The defendants then moved for summary judgment pursuant to Fed.R.Civ.P. 56.
 
 
 4
 In its order of April 11, 1988, the district court dismissed the claims against the defendants in their official capacities as being precluded by the Eleventh Amendment. Reluctant to base its holding solely on res judicata, the court went on to say that if indeed Rasheed-Bey has been granted his First Amendment right to freely exercise his religion as defined in two Supreme Court cases that had been decided subsequent to the filing of Rasheed-Bey's complaint,[4] then his request for injunctive relief was moot. The district court dismissed the complaint without prejudice,[5] allowing Rasheed-Bey to amend it in light of the current standards governing the right to freely exercise one's religion while incarcerated. Rasheed-Bey then filed a verified petition for rehearing, contending that he was not a member of the plaintiff class in James v. Lash, and that he had been denied his right to freely worship as a member of the MST on the same basis as had been granted to members of other Muslim sects. The district court granted Rasheed-Bey's petition on August 31, 1988, effectively reinstating his original complaint, and directed the parties to brief the court on the effect of recent case law on Rasheed-Bey's claims.[6]
 
 
 5
 On February 27, 1990, after noting that Rasheed-Bey had taken no further action in prosecuting this case for nearly a year, the district court ordered Rasheed-Bey to show cause why the case should not be dismissed for want of prosecution. Rasheed-Bey responded, alleging that since the time he had been without counsel, the defendants had been unwilling to speak with him directly concerning a possible resolution of the case. He then moved the court to appoint a new attorney to represent him. After further briefing, the defendants renewed their motion for summary judgment.[7] Finding no basis upon which Rasheed-Bey's action should be maintained, the district court directed entry of final judgment in favor of the defendants on November 8, 1991. Rasheed-Bey filed a timely appeal.[8]
 
 II. ANALYSIS
 
 6
 In evaluating a district court's grant of summary judgment, we review de novo the record and the controlling law. See Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir.1990). "[W]e determine anew whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law." Lulich v. Sherwin Williams Co., No. 92-2380, slip op. at 3-4 (7th Cir. April 30, 1993) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-52 (1986)). In doing so, we draw all permissible inferences from the record in favor of the nonmoving party. See id. When confronted with a motion for summary judgment, the party bearing the burden of proof on an issue may not, however, merely rest on his pleadings; instead, he must affirmatively demonstrate by specific factual allegations that there is a genuine issue of material fact entitling him to a trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson, 477 U.S. at 250.
 
 
 7
 A. The res judicata effect of James v. Lash.
 
 
 8
 "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980). Res judicata applies to assure the finality of the judicial decision in the earlier action when the following three elements are present: (1) a final judgment on the merits; (2) identity of the cause of action; and (3) identity of the parties or their privies. See Prochotsky v. Baker & McKenzie, 966 F.2d 333, 334 (7th Cir.1992) (citations omitted); Smith v. City of Chicago, 820 F.2d 916, 917 (7th Cir.1987) (citations omitted).
 
 
 9
 It is well-established that "a judgment in a properly entertained class action is binding on class members in any subsequent litigation." Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 874 (1984) (citations omitted); Fed.R.Civ.P. 23(c)(3). For purposes of applying res judicata, an issue which "could have been raised" in the earlier action is one that was in existence at the time the original complaint was filed. See Spiegel v. Continental Illinois Nat'l Bank, 790 F.2d 638, 645-46 (7th Cir.), cert. denied, 479 U.S. 987 (1986); see also Manning v. City of Auburn, 953 F.2d 1355, 1360 (11th Cir.1992); Young-Henderson v. Spartanburg Area Mental Health Center, 945 F.2d 770, 773-75 (4th Cir.1991). Thus, res judicata does not apply to bar a lawsuit brought to vindicate rights that were allegedly violated after the filing of the complaint in the earlier action. See Spiegel, 790 F.2d at 645 (citations omitted); Los Angeles Branch NAACP v. Los Angeles Unified School Dist., 750 F.2d 731, 739 (9th Cir.1984), cert. denied, 474 U.S. 919 (1985); see also Prochotsky, 966 F.2d at 335 (identity of cause of action exists when "a single core of operative facts forms the basis of both lawsuits") (internal quotations, citations omitted).[9]
 
 
 10
 Insofar as Rasheed-Bey attempts to relitigate issues which were or could have been raised in James v. Lash, his claim is precluded by res judicata. It is undisputed that the consent decree entered in that case operates as a final judgment on the merits for purposes of res judicata. See, e.g., Young-Henderson, 945 F.2d at 773. Furthermore, the plaintiff class in James was defined so as to embrace all Muslims incarcerated in the Indiana State Prison, including those belonging to MST. In his deposition, Rasheed-Bey admits that he himself participated in the drafting of Standard Operating Procedure # 605 ("SOP # 605"), which was incorporated in the consent decree forming the basis of the settlement of the James case. (Rasheed-Bey Dep. at 50-52). Although Rasheed-Bey does not state that he was a member of the MST at the time of the drafting SOP # 605, he does admit that members of the MST worked on the document. (Rasheed-Bey Dep. at 52). He and other Muslims were notified of the proposed settlement of James and were afforded an opportunity to submit objections to that settlement, but failed to do so. Rasheed-Bey's specific challenge to the consent decree in James, and his claim that it does not adequately accommodate the special needs, concerns, and practices of MST members, is therefore foreclosed by res judicata.
 
 
 11
 B. Claims arising after James v. Lash.
 
 
 12
 Rasheed-Bey's pro se complaint, read liberally, makes two claims concerning violations of his First Amendment rights which were alleged to have occurred after the filing of the complaint in James v. Lash. He contends that (1) prison officials have not been implementing the procedures agreed upon in SOP # 605 to accommodate the religious practices of Muslims, and that (2) prison officials have discriminated against MST adherents in favor of other Muslims, notably the American Muslim Mission, by refusing to honor their special requests to be allowed to display certain religious artifacts and to receive MST literature in prison, and by excluding the MST "from administrative and departmental recognition."
 
 
 13
 With respect to the claim that SOP # 605 is not being followed, Rasheed-Bey has brought forward no evidence tending to show that prison officials have failed to implement SOP # 605 or that they have ignored the needs of Muslim inmates. See Celotex Corp., 477 U.S. at 322-23. Despite being given proper notice by the defendants of the effect of their motion for summary judgment, see Lewis v. Faulkner, 689 F.2d 100, 101-03 (7th Cir.1982), and ample time and opportunity to meet his burden, Rasheed-Bey has failed to show either that the Indiana State Prison officials are not following SOP # 605, or that the needs of MST adherents or of any other Muslim inmates are being systematically ignored. At most, Rasheed-Bey's deposition reveals occasional lapses by the staff at the Indiana State Prison, such as failing to process a grievance (Rasheed-Bey Dep. at 53-54), or mislabeling a meal as pork-free (Rasheed-Bey Dep. at 62-64), or not providing MST adherents with sack lunches for a brief period during the fast of Ramadan. (Rasheed-Bey Dep. at 22). It is well-established that occasional lapses such as these do not state a constitutional violation. See Hadi v. Horn, 830 F.2d 779, 784, 787-88 (7th Cir.1987) (occasional and sporadic cancellation of religious services, where other opportunities for religious observance were provided, did not unreasonably impinge on inmates' First Amendment rights); see also Al-Alamin v. Gramley, 926 F.2d 680, 688-89 (7th Cir.1991).
 
 
 14
 Rasheed-Bey's claims of discrimination are likewise unsupported. His deposition testimony, viewed in the light most favorable to him, again reveals only occasional lapses on the part of prison officials such as may evince a lack of knowledge of the nature of his religious observances, rather than any systematic exclusion or discrimination, or failure to provide a reasonable accommodation of his practices.[10] We have found nothing in the record beyond Rasheed-Bey's bare allegation that would indicate that MST adherents have been deprived of "all means of expression" of the unique beliefs of their sect, see Woods v. O'Leary, 890 F.2d 883, 887 (7th Cir.1989) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 352 (1987)), or that they have been denied a reasonable opportunity to follow the tenets of their faith comparable to the opportunity afforded inmates who are members of the American Muslim Mission, or of any other religious denomination. See id. (quoting Cruz v. Beto, 405 U.S. 319, 322 (1972)); see also Al-Alamin, 926 F.2d at 687-88; Young v. Lane, 922 F.2d 370, 377-78 (7th Cir.1991); Johnson-Bey v. Lane, 863 F.2d 1308, 1312 (7th Cir.1988). Finally, Rasheed-Bey complains that the American Muslim Mission has been granted the "administrative recognition" denied his own group because it is cited in SOP # 605 as representing Muslims in the Indiana State Prison. This claim constitutes a challenge to the consent decree in James v. Lash, and is therefore foreclosed by res judicata, as we have already discussed.
 
 
 15
 Rasheed-Bey's claims that MST has been denied the right to display certain religious artifacts and to receive religious publications suffers from a more serious flaw. Although incarcerated persons retain the right to freely exercise their religion, this right may be circumscribed where necessary to serve valid penological objectives. Valid penological objectives include crime deterrence, rehabilitation, prison security, and the proper allocation of limited prison resources. O'Lone, 482 U.S. at 348, 352; Al-Alamin, 926 F.2d at 686. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." O'Lone, 482 U.S. at 349 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).
 
 
 16
 Thus, prison regulations prohibiting nonstandard headgear, see Young, 922 F.2d at 377, restricting mailing privileges, see Woods, 890 F.2d at 885-87, requiring careful screening of religious leaders prior to their being allowed access inmates, see Siddigi v. Leak, 880 F.2d 904, 907, 909-10 (7th Cir.1989), and prohibiting the possession of rosaries and scapulars in prison cells, see Friend v. Kolodzieczak, 923 F.2d 126, 127-28 (9th Cir.1991), have been upheld as reasonably related to legitimate interests of prison security. In particular, the regulation in Young prohibiting Jewish inmates from wearing yarmulkes was upheld in part because of the need to avoid the perception of favoritism among inmates. 922 F.2d at 377 (citations omitted). The regulations Rasheed-Bey complains of, which restrict the possession and display of certain flags and the wearing of the fez and other clothing having religious significance to MST members, are reasonably related to the need to maintain prison security.[11]
 
 
 17
 Prison regulations that affect the receipt of outside publications by inmates are subject to the same standard of review as are other prison regulations, and are upheld if they are "reasonably related to legitimate penological interests." Thornburgh v. Abbott, 490 U.S. 401, 409, 413 (1989) (quoting Turner, 482 U.S. at 89). The regulation challenged by Rasheed-Bey allows inmates "to possess one (1) copy of any religious book or publication providing that the book or publication does not incite violence toward others or is disruptive to the security and operation of the facility/institution." Inmates are not, however, permitted to possess "multiple copies of the same religious book or publication." (Indiana Department of Correction Manual of Policies and Procedures, R. at 56, Exh. C). On its face, this regulation does not deny MST adherents the right to possess religious literature that is not disruptive of prison security,[12] but only restricts the number of copies of a particular publication that an inmate may possess.
 
 
 18
 The documents supplied by Rasheed-Bey show that as applied to him, the regulation did not prohibit him from receiving MST literature, but only from possessing multiple copies of the same publication. This regulation may create a minor impediment to Rasheed-Bey's exercise of his First Amendment rights. But because the regulation allows inmates to possess one copy of a religious publication, Rasheed-Bey is not deprived of all means of expressing his beliefs or of communicating with those outside the prison who share his faith. See Young, 922 F.2d at 376 (citations omitted). Furthermore, the restriction to one copy of a publication per inmate appears on its face to be reasonably related to legitimate sanitation and security concerns. Under these circumstances, the district court's dismissal of Rasheed-Bey's action was proper.[13]
 
 CONCLUSION
 
 19
 The district court's dismissal with prejudice of Rasheed-Bey's civil rights action is
 
 
 20
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 Pursuant to Fed.R.App.P. 43(c), James E. Aiken, the present Commissioner of the Indiana Department of Correction, has been substituted for his predecessor, John T. Shettle
 
 
 [2]
 The complaint indicates that Rasheed was suing the defendants in their official and individual capacities
 
 
 [3]
 The consent decree was part of the settlement of the consolidated cases of James v. Lash, No. S73-5, and Walker v. Lane, No. 3687, a class action brought to adjudicate the rights of Muslim inmates. The district court in that case certified the class of "inmates of the Indiana State Prison who are followers of the Honorable Elijah Muhammad" as the plaintiff class
 
 
 [4]
 O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987), and Turner v. Safley, 482 U.S. 78 (1987)
 
 
 [5]
 Rasheed's premature appeal of this ruling was dismissed by this court. (Order of June 29, 1988)
 
 
 [6]
 In the meantime, the district court had granted counsel's motion to withdraw from representing Rasheed-Bey in this action, and had substituted John T. Shettle for Gordon Faulkner as defendant. As noted above, Mr. Shettle has since been succeeded by Mr. James E. Aiken, the current Commissioner of the Indiana Department of Correction
 
 
 [7]
 In its order of September 4, 1991, the district court indicated that Rasheed-Bey's action may be moot due to the fact that he was no longer an inmate of the Indiana State Prison, having been transferred to the Indiana Reformatory. The court directed briefing on this threshold issue as well as on the merits. Rasheed-Bey has since been returned to the Indiana State Prison
 
 
 [8]
 While his appeal was pending, Rasheed-Bey filed three motions requesting that this court take "judicial notice" of certain facts. These motions were, in substance, requests to supplement the record on appeal. His motion of December 4, 1992, in which he asked the court to take notice of the fact that the Indiana State Prison had persisted in denying the MST's request to receive certain religious publications, was granted. (Order of Dec. 10, 1992). The other two motions were denied. (Orders of Jan. 8, 1993 and March 5, 1993)
 
 
 [9]
 But cf. Young-Henderson, 945 F.2d at 774-75 (preclusive effect of consent decree is determined by the intent of the parties, and thus may even extend to bar litigation of claims arising after the original complaint was filed, provided the consent decree clearly expresses this intent)
 
 
 [10]
 One example was the failure of prison officials to provide Rasheed-Bey with sack lunches during the month of Ramadan in 1986, due to simple ignorance of the fact that MST adherents are Muslims. Within two days after this was clarified, Rasheed-Bey was provided with sack lunches. (Rasheed-Bey Dep. at 22)
 
 
 [11]
 In support of their motion for summary judgment, defendants presented the affidavit of Sheldon Grame, the Central Office Supervisor of the Indiana Department of Correction in charge of religious services. In his affidavit, Grame stated that "the Indiana Department of Correction has strong evidence the MST acts as a front for Black Dragon gang activity." (Grame Aff. at 2). Rasheed-Bey's motion to strike that affidavit was denied. (Order of October 21, 1987). Rasheed-Bey's response to defendants' motion and attached exhibits was merely to insist that MST is a bona fide religion and that his beliefs are sincerely held. We assume that this is true, and observe that Rasheed-Bey's response fails to address the defendants' legitimate need to maintain institutional security and to avoid the appearance of condoning gang activity
 
 
 [12]
 A similar restriction on receipt of literature in federal prisons was upheld as facially valid in Abbott, 490 U.S. at 403 & n. 1, 418-19
 
 
 [13]
 Rasheed-Bey has no constitutional or statutory right to have counsel appointed for him in this civil matter. See DiAngelo v. Illinois Dept. of Public Aid, 891 F.2d 1260, 1262 (7th Cir.1989); Wolfolk v. Rivera, 729 F.2d 1114, 1119 (7th Cir.1984). Moreover, the district court gave Rasheed-Bey every opportunity to present his case; there is nothing in the record to indicate that Rasheed-Bey's due process rights were infringed. The district court's decision not to request new counsel after Rasheed-Bey's counsel withdrew was not an abuse of discretion. See Jackson v. County of McLean, 953 F.2d 1070, 1071-72 (7th Cir.1992); Howland v. Kilquist, 833 F.2d 639, 646 (7th Cir.1987)