**William DOYLE, Plaintiff–Appellant,**

v.

**Glen PREWITT and Donald N. Snyder, Jr., Director, Defendants–Appellees.**

No. 01–2345.

United States Court of Appeals, Seventh Circuit.

Submitted April 22, 2002 *.

Decided April 22, 2002.

Before FAIRCHILD, ROVNER, and
EVANS, Circuit Judges.

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

## ORDER

After Illinois prisoner William Doyle was denied the opportunity to read or discuss a letter during two religious services, he sued prison officials under 42 U.S.C. § 1983 for violating his First Amendment rights to the free exercise of religion and freedom of speech. The district court granted summary judgment for the defendants, and we affirm.

The Illinois Administrative Code contains provisions governing religious activities within the Illinois Department of Corrections (IDOC). *See* Ill. Admin. Code tit. 20, § 425.60. The regulations specify conditions that must be met for group religious activities to be conducted without a chaplain of the congregants' particular faith. *See id.* One such condition is that "any proposed sermon or doctrinal interpretation" must be submitted "to the Chief Administrative Officer or staff designated to supervise the religious activity for review and approval prior to delivery, based on safety and security concerns." *Id.* Doyle, a Muslim incarcerated at the Western Illinois Correctional Center (WICC), regularly participated in the religious service of Jumu'ah, which took place every Friday without a Muslim chaplain or imam. On July 9, 1999, during the service's Khutbah (sermon), Doyle attempted to deviate from the text of the pre-approved sermon and read from a letter received from an Islamic clergyman. The letter had not been submitted for pre-approval, and Glen Prewitt, the prison chaplain supervising the service, confiscated the letter as contraband. Prewitt also informed Doyle that any further deviation from the pre-approved sermon would result in termination of the service. Doyle attempted to discuss the letter at another religious service the next day, but Prewitt told him again that he could not do so and directed him to move on to another topic.

Doyle then sued Prewitt and IDOC Director Donald Snyder, seeking injunctive relief as well as compensatory and punitive damages. He also sought class certification of all followers of Islam incarcerated at WICC. In January 2000 the district court held a hearing pursuant to 28 U.S.C. § 1915A, and denied the defendants' motion to dismiss. The court then directed the parties to submit memoranda of law discussing their positions, which the court construed as cross-motions for summary judgment. The court granted the defendants' motion and denied Doyle's after concluding that the pre-approval requirement was reasonably related to a legitimate penological interest.

We review the district court's grant of summary judgment de novo, taking the facts and reasonable inferences in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Michael v. St. Joseph County,* 259 F.3d 842, 845 (7th Cir.2001). Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Inmates retain their First Amendment rights to the free exercise of religion and free speech. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459. 407 (1989). But these rights are limited within the prison context and regulations that curtail them are constitutional if "reasonably related to a legitimate penological interest." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). In applying this standard we consider (1) whether there exists a valid, rational connection between the regulation and the justification offered for it; (2)

whether there remains open to the inmate alternative means of exercising the right; (3) whether accommodating the right will impact guards and other inmates; and (4) whether ready alternatives to the regulation exist. *Id.* at 89–91, 107 S.Ct. 2254; *Al–Alamin v. Gramley,* 926 F.2d 680, 685 (7th Cir.1991).

■ It is undisputed that the regulation at issue is concerned with safety and security, Ill. Admin. Code tit. 20, § 425.60(f)(6)—undoubtedly legitimate interests. *O'Lone,* 482 U.S. at 348, 107 S.Ct. 2400. Indeed, we have already recognized the potential safety and security issues that can arise during a prison religious service that takes place without a chaplain from the particular faith—security would be jeopardized if inmates are given authority positions as religious leaders over other inmates, conflicts might arise because inmates lack the requisite expertise to resolve debated issues, and the services might be used for gang meetings or communications. *See Hadi v. Horn,* 830 F.2d 779, 784 (7th Cir.1987). Given these concerns, we held that a prison's decision to cancel a Jumu'ah service altogether in the absence of an imam had a valid, rational connection with a legitimate penological interest. *See id.; see also Al–Alamin,* 926 F.2d at 686–87. Moreover, these same concerns also apply to Doyle's claim that he had a free-speech right to read the letter to other prisoners and make what he describes as "spontaneous utterances" without getting prior approval. *See Thornburgh,* 490 U.S. at 416, 109 S.Ct. 1874 (prison may screen incoming communications or communications between inmates for security concerns).

Doyle, of course, was not left without means of practicing his faith. To have built his sermon around the clergyman's letter, Doyle merely was obligated to submit the letter for pre-approval, which he did not do. Doyle instead wanted an unsupervised forum in which to read from the unscreened letter and "spontaneously" interpret its message, and it is precisely because of the potential danger to inmates and staff from letting him do so that the prison was not required to accommodate his wish. Nor has Doyle advanced any ready alternative to the regulation, as it is his burden to do. *See O'Lone,* 482 U.S. at 350, 107 S.Ct. 2400; *Woods v. O'Leary,* 890 F.2d 883, 887 (7th Cir.1989). Doyle posits that the prison already has disciplinary rules in place, and may discipline inmates after the fact if they cause safety or security problems during religious services. But this is not a feasible alternative; prison officials do not have to wait for a disturbance to arise before taking steps to minimize security risks. *Hadi,* 830 F.2d at 785.

Still, Doyle argues that even if the regulation is reasonably related to a legitimate penological interest, it is overbroad and vague and should be analyzed under a "least restrictive means" standard. The Court utilized such a standard to evaluate a regulation authorizing prison officials to screen *outgoing* prison correspondence in *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), declaring that a restriction that "furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad," *id.* at 413–14, 94 S.Ct. 1800. In *Thornburgh,* however, the Court later made clear that such a standard is inapplicable when evaluating restrictions placed on speech *within* the prison, and that the proper standard is the *Turner* reasonableness standard. *See id.* at 413–14, 94 S.Ct. 1800. Moreover, we have explained that the overbreadth and vagueness doctrines evolved "to prevent the slightest discouragement of free speech," and have little relevance in the

prison context where speech is already limited. *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir.1986). As discussed above, the regulation meets the requirements of *Turner* and therefore is constitutionally valid.[1]

■ What remains, then, are Doyle's procedural arguments. First, he contends that the district court erred by denying him leave to supplement his complaint pursuant to Federal Rule of Civil Procedure 15(d). In January 2001 Doyle sought to allege new conduct by the defendants including their cancelling Muslim services in retaliation for this lawsuit. We review a district court's decision on a Rule 15(d) motion for abuse of discretion. *See Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 772 F.2d 1329, 1338 (7th Cir.1985). In denying Doyle's motion the district court noted that dispositive motions had been pending since May and June of 2000, and that adding new claims "would only serve to delay this litigation." Denying a Rule 15(d) motion because it would cause undue delay, as the district court did here, is not an abuse of discretion. *See Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996); *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985).

■ Finally, Doyle argues that the district court erred in denying class certification, which we review for abuse of discretion. *Chavez v. Ill. State Police*, 251 F.3d 612, 629–30 (7th Cir.2001). Where the district court determines that the plaintiff's claims are without merit, the plaintiff is disqualified as a class representative "thus resolving the issue of class certification." *Id.* at 630. The district court determined Doyle's claims were without merit; there-

fore, the denial of class certification was proper.

Accordingly, the district court's judgment is AFFIRMED.

---

1. Doyle also argues that the regulation is unconstitutional "as applied" to him. But he never submitted the letter for pre-approval, and he does not contend that the regulation was applied in an unreasonable or arbitrary way. *See Turner*, 482 U.S. at 100, 107 S.Ct. 2254.