**ROYAL MEADOWS STABLES, INC., Appellant,**

v.

**COLONIAL FARM CREDIT, ACA, Appellee.**

**Civil Action No. 2:96CV1236.**

United States District Court, E.D. Virginia, Norfolk Division.

May 8, 1997.

was void because it was continued to a date that was postpetition. We have rejected this argu- ment.

Dean Worley Sword, Jr., Portsmouth, VA, for Royal Meadows Stables, Inc.

Carl Edward Eason, Jr., Pretlow, Eason & Pretlow, Suffolk, VA, for Colonial Farm Credit, ACA.

Debera F. Conlon, Office of U.S. Trustee, Norfolk, VA, U.S. Trustee.

## *MEMORANDUM OPINION AND ORDER*

JACKSON, District Judge.

### INTRODUCTION

This case comes before the Court pursuant to 28 U.S.C. § 158(a) as an appeal from the bankruptcy court's order of November 21, 1996, granting Appellee's motion for summary judgment on the basis of *res judicata*. One issue is presented to this Court on appeal: whether Appellant's breach of contract claim is barred by the doctrine of *res judicata*.[1] For the reasons that follow, the Court

---

1. Appellant Royal Meadows presents an additional issue in its brief: was Royal Meadows' claim barred by principles of collateral estoppel? Although CFC argued issues of collateral estoppel as well as *res judicata* in its summary judgment motion, the bankruptcy court denied CFC's motion for summary judgment on the grounds of collateral estoppel. (Tr. at 44.) Thus, this is not an issue in this appeal.

**AFFIRMS** the bankruptcy court's holding that Appellant's breach of contract claim is barred by the doctrine of *res judicata*.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Royal Meadows Stables, Inc., ("Royal Meadows") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on July 15, 1993. An Order for Relief was entered under that Chapter on that date. On the date of filing, Appellee Colonial Farm Credit, ACA, ("CFC") was a secured creditor of Royal Meadows. On August 24, 1993, CFC filed two proofs of claim in the bankruptcy proceeding: one in the amount of $359,487.35 and one in the amount of $100,991.25, stating that these claims were secured by certain real estate owned by debtor-in-possession Royal Meadows.[2] Royal Meadows did not file any objections to either of the two proofs of claims.

During August 1993, Royal Meadows began negotiations with Warren Birdsong for the sale of 146 of the available 166 acres of the Suffolk property to Birdsong ("Birdsong property"). On September 15, 1993, Royal Meadows executed a sales contract with Birdsong to sell the Birdsong property for the purchase price of $400,000.00

Royal Meadows then filed with the bankruptcy court a notice of intent to sell and a hearing was held on November 16, 1993. CFC did not object to the sale to Birdsong, but a junior secured creditor did object.[3] At the hearing, Royal Meadow represented that $400,000.00 was the best offer it had received for the sale of the property. The court overruled the junior creditor's objection and entered an order approving the sale to Birdsong. Notably, the motion to approve the sale did not seek, and the order did not provide for, a sale free and clear of liens under § 363(f)[4], even though the sales contract between Royal Meadows and Birdsong stated that the purchase offer was "[s]ubject to removal of liens by Bankruptcy Court, if necessary to convey clear title."

Pending at the time of the hearing was CFC's November 2, 1993 motion to modify the automatic stay imposed by 11 U.S.C. § 362. Royal Meadows failed to appear and contest this motion and the bankruptcy court ordered CFC relief from the stay effective December 31, 1993. When the closing with Birdsong did not occur by that date, CFC directed the Trustee under the Royal Meadow deeds of trust to institute foreclosure proceedings on the entire Suffolk property and a foreclosure sale was scheduled for January 21, 1994.

Birdsong consummated the sale with Royal Meadows on January 20, 1994. The parties agree that CFC was paid the sum of $394,813.24 on or about January 20, 1994. However, Royal Meadows alleges that CFC negotiated this sum certain as full and final satisfaction of both its claims and agreed to release its liens from the Suffolk property, but that CFC has refused to release its liens or cancel the notes. Royal Meadows further contends that CFC has subsequently assigned and transferred the notes and its claims back to Lloyd C. March, and that March refuses to release his lien on the remaining portion of the real property. CFC asserts that if the remaining parcel of real property is encumbered by a lien held

**2.** CFC's claims were based on two promissory notes executed by Royal Meadows in the face amounts of $350,000.00 and $100,000.00, respectively, each payable to the order of Lloyd C. March. Royal Meadows had purchased a 166–acre tract in Suffolk, Virginia ("Suffolk property") from March on July 16, 1991, and had given these two promissory notes, secured by first and second deeds of trust, respectively, against the real estate ("Royal Meadows deeds of trust"). These notes were subsequently assigned and transferred by March for valuable consideration to CFC.

Royal Meadows had made certain payments to CFC, but ultimately defaulted on its obligations, at which time CFC scheduled a sale of the property to foreclose upon its collateral. Just prior to the foreclosure on July 15, 1993, Royal Meadows filed for relief pursuant to Chapter 11.

**3.** The creditor, David McKenzie, held a secured interest in the original amount of $125,000.00 ("McKenzie deed of trust") that was junior to the two deeds of trust held by CFC.

**4.** The order simply provided "WHEREFORE the Court does approve the application and grant the debtor in possession the authority to sell and convey the aforesaid property."

by March, it is because March continues to have a secured claim because the balance owing on the notes were not paid in full from the proceeds of the sale of the Birdsong property.

On or about September 26, 1994, Royal Meadows filed a complaint against CFC ("1994 complaint") containing four counts:

(1) CFC accepted payoff funds and refused to release the Royal Meadows deeds of trust liens upon the Suffolk property;

(2) CFC violated the automatic stay because at the time of the January 21, 1994 foreclosure sale, March was a debtor under Chapter 11 of the Bankruptcy Code;

(3) CFC falsely represented to Royal Meadows and its agents the "amount necessary to pay the debt," creating "a situation where the remaining unsold real property is encumbered by liens now held by March, to the detriment of the debtor and various other creditors;" and

(4) CFC forced Royal Meadows to sell the property at a "sacrifice or forced sale price" which resulted in a loss to Royal Meadows.

CFC filed a response and grounds of defense to these allegations. The bankruptcy court treated CFC's response as a motion to dismiss and the Honorable Hal J. Bonney held a hearing on these issues on December 1, 1994. After oral argument, the bankruptcy court entered an order on December 22, 1994 dismissing all four counts of the 1994 complaint.

Subsequently, Royal Meadows filed an objection to the $100,991.25 proof of claim originally filed by CFC, maintaining that when CFC accepted the sum of $394,813.24, the debt owing under the notes was discharged and therefore March, as holder of the notes, held no claim against Royal Meadows. After reviewing the stipulated facts and supporting briefs, and after oral argument by counsel, the bankruptcy court issued a Memorandum Opinion on October 11, 1995, holding that the indebtedness due under the $100,000 note was not discharged, that the lien still existed

upon the 20–acre parcel which was excluded from the sale to Birdsong and the claim should be allowed as a secured claim. Royal Meadows remains the owner of the remaining parcel and the Royal Meadows deeds of Trust and the McKenzie deed of trust are still of record as liens against the remaining parcel.

On or about June 25, 1996, Royal Meadows filed a second complaint against CFC, alleging that CFC had entered into a contract with Royal Meadows whereby CFC would release these two liens from the Suffolk property owned by Royal Meadows upon payment of $394,813.24 to CFC. On or about July 24, 1996, CFC filed its response and grounds of defense, denying the existence of any contract between Royal Meadows and CFC and raising the affirmative defenses of *res judicata* and collateral estoppel. On October 8, 1996, CFC moved for summary judgment on the grounds of *res judicata* and collateral estoppel. On October 30, 1996, Royal Meadows filed a memorandum in opposition to CFC's motion for summary judgment. After a hearing on October 31, 1996, the bankruptcy court granted CFC's motion for summary judgment on the basis of *res judicata* only, finding that the dismissal of Count 11 of the 1994 complaint was a final judgment on the merits and that Royal Meadows' breach of contract claim arises out of the identical set of facts as Count III of the 1994 complaint, alleging fraud.

Royal Meadows subsequently appealed that decision to this Court.

## II. STANDARD OF APPELLATE REVIEW

A district court reviews a bankruptcy court's decisions of law *de novo. L & R Associates v. Curtis*, 194 B.R. 407, 409 (E.D.Va.1996) (*citing In re Johnson*, 960 F.2d 396, 399 (4th Cir.1992)). A district court reviews a bankruptcy court's findings of fact under a clearly erroneous standard. Fed. R. Bankr.P. 8013.

## III. DISCUSSION

Federal courts have traditionally adhered to the related doctrines of "collateral estoppel" or "issue preclusion" and *"res judicata"*

or "claim preclusion." [5] These two doctrines serve to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

■ The doctrine of "collateral estoppel" or "issue preclusion" states that once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation. *United States v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984) (*citing Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)). This doctrine is not at issue in this case as the bankruptcy court denied CFC's motion for summary judgment on the grounds of collateral estoppel.

■ "*Res judicata*" or "claim preclusion" is the doctrine the Court is concerned with in this case. It states that a final judgment on the merits precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). *Res judicata* does not bar claims that did not exist at the time of the prior litigation. The standard is objective and it is the "existence of the present claim, not party awareness of it, that controls." *Meekins v. United Transp. Union,* 946 F.2d 1054, 1057 (4th Cir.1991).

To invoke *res judicata,* a party must establish three elements: (1) a final judgment on the merits in an earlier suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits. *Meekins,* 946 F.2d at 1057; *Young–Henderson v. Spartanburg Area Mental Health Center,* 945 F.2d 770, 773 (4th Cir.1991); *Keith v. Aldridge,* 900 F.2d 736, 739 (4th Cir.), *cert. denied sub nom. Keith v. Rice,* 498 U.S. 900, 111 S.Ct. 257, 112 L.Ed.2d 215 (1990); *Nash County Bd. of Ed. v. Biltmore Co.,* 640 F.2d 484, 486 (4th Cir.), *cert. denied,* 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981).

In the present case, there is no dispute as to the third element necessary to apply *res judicata:* the identity of the parties is the same in the present litigation as in the 1994 litigation. The parties disagree, however, as to the remaining two requirements: (1) whether there was a final judgment on the merits in the 1994 litigation, and (2) whether there is mutuality of the identity of the two causes of action.

### A. Final Judgment on the Merits

■ The *res judicata* final judgment requirement is met when "a particular adversary proceeding has been finally resolved [such that] the outcome constitutes an appealable final decision." *Turshen v. Chapman,* 823 F.2d 836, 839 (4th Cir.1987). The judgment at issue in this appeal is the bankruptcy court's dismissal of Count III of the 1994 complaint by order dated December 22, 1994.[6] The December 22, 1994 order reads in relevant part:

> Upon [CFC's] motions to dismiss Count I, Count II, Count III and Count IV of the Complaint filed herein by [Royal Meadows].. [I]t appearing to the Court, after the argument of counsel ... that the motions should be granted for the reasons stated from the bench by this Court. Therefore it is ORDERED that the motions by

---

**5.** The Restatement of Judgments now speaks of *res judicata* as "claim preclusion" and collateral estoppel as "issue preclusion." Restatement (Second) of Judgments § 17 (1996 App.). Some courts and commentators use the term "*res judicata*" as generally meaning both forms of preclusion.

**6.** As explained above, the 1994 complaint contained 4 counts, all of which were dismissed in

the December 22, 1994 order. The Counts were dismissed on various grounds. However, only Count III, alleging CFC falsely represented to Royal Meadows and its agents the amount necessary to pay the debt owed on the notes, is relevant here for purposes of *res judicata,* as it is the Count alleged to be based on the same set of facts as the breach of contract claim in the present action.

[CFC] to dismiss Count I, Count II, Count III, and Count IV of the Complaint filed by [Royal Meadows] be, and hereby are, granted and the Complaint is hereby dismissed.

Since the 1994 order incorporates by reference the "reasons stated from the bench," it was necessary for the bankruptcy court also to consider the relevant parts of the 1994 transcript that explained the basis for the order. The explanation given by Judge Bonney as to the dismissal of Count III is not a lengthy or particularly helpful one. He stated simply:

> [T]he Court believes the proofs of claim still stand. They are under law *res judicata*, and that's subjected to, they are filed under oath, and I think that they speak in that regard. Further, relative to this Count 3, I would observe that the damages are certainly not sufficiently pleaded here to know what it is that is being sought.

(Tr. of 12/1/94 hearing, at 22.) He went on to state that:

> I wonder if these were not better subjects to motions or a motion for summary judgment rather than the motion to dismiss, but that has not been raised by [CFC]. So I find it is not an issue, and the Court on all four counts grants the motion to dismiss.

(*Id.* at 23.)

Royal Meadows argues that this ruling given from the bench in the 1994 litigation is "far from clear," particularly as the ruling is not evidenced by any formal written opinion. (Appellant's Br. at 5.) Royal Meadows states that "it could be argued that Judge Bonney was dismissing the 1994 complaint without prejudice with an invitation to challenge the [proofs of claim]." (*Id.* at 6.) It is CFC's position that Judge Bonney dismissed Count III under Federal Rule of Civil Procedure 12(b)(6),which operates as a final adjudication on the merits. The parties raised these same arguments to the bankruptcy judge, and he found that Judge Bonney's ruling was a dismissal on the merits as to Count III. (Tr. of 10/31/96 hearing, at 54–55.) This Court agrees.

To determine if a dismissal is on the merits for purposes of *res judicata*, one must look to the grounds asserted by the moving party seeking the dismissal and determine whether each of the grounds asserted were, in fact, a merits decision. *Thomas v. Consolidation Coal Co.*, 380 F.2d 69, 80 (4th Cir.), *cert. denied*, 389 U.S. 1004, 88 S.Ct. 562, 19 L.Ed.2d 599 (1967). Although there is no written opinion from the 1994 litigation, the order, transcript and pleadings are available to show what matters were raised and in fact litigated. CFC, in its response to Royal Meadows' 1994 complaint, moved the bankruptcy court to dismiss Count III of the complaint on only one ground: that it failed to state a claim by Royal Meadows upon which relief could be granted. As evidenced by the December 22, 1994 order and Judge Bonney's comments from the bench, the bankruptcy court clearly treated this response as a motion to dismiss Count III under Federal Rule of Civil Procedure 12(b)(6). (*Id.* at 47–48.) If a case is dismissed under Federal Rule of Civil Procedure 12(b)(6), such judgment is on the merits with *res judicata* effect. *See Paganis v. Blonstein*, 3 F.3d 1067, 1071 (7th Cir.1993); *Exchange Nat. Bank of Chicago v. Touche Ross and Co.*, 544 F.2d 1126, 1130 (2d Cir.1976).

Moreover, "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under [Fed.R.Civ.P. 41(b) ] and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits." Fed.R.Civ.P. 41(b), *Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1180 (4th Cir. 1989). The plain language of Federal Rule of Civil Procedure 41(b) also indicates that the dismissal of Count II was an adjudication on the merits. Judge Bonney did not specify the dismissal to be "without prejudice," and Royal Meadows failed to move the bankruptcy court pursuant to Federal Rule of Civil Procedure 59(e) or 60(b)(6) to specify that the judgment was "without prejudice." Moreover, the dismissal was clearly not one for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19. *See id.*

For these reasons, this Court affirms the bankruptcy court's finding that the order of December 22, 1994 dismissing Count II of Royal Meadows' 1994 complaint was a final judgment on the merits for purposes of *res judicata*.

## B. *Identity of the Causes of Action*

 Consistent with the modem trend, the Fourth Circuit has adopted the Restatement (Second) of Judgments transactional approach to the identity of claims question. Under the Restatement standard, the critical inquiry is whether "the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Young–Henderson*, 945 F.2d at 773–774; *Keith*, 900 F.2d at 740. The critical inquiry is whether "a claim made in the second action involves a right arising out of the same transaction or series of connected transactions that gave rise to the claims in the first action." *Harnett v. Billman*, 800 F.2d 1308, 1314 (4th Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987). The scope of the transaction or connected transactions is to be measured by considering factors such as "common origin and relation, as well as whether the acts giving rise to the claim would be considered as part of the same unit by the parties in their business capacities." *Id.; Buckeye Prod. Credit Ass'n. v. Farm Credit Admin.*, 787 F.Supp. 578, 584 (E.D.Va.1992), *rev'd on other grounds*, 997 F.2d 11 (4th Cir.1993).

Count III of the 1994 complaint was a cause of action for fraud while Royal Meadows' current claim is one for breach of contract. Applying the above transactional standard, the bankruptcy court found that even though the theory of recovery is articulated differently, the breach of contract claim arises out of the identical set of facts. (Tr. at 51.) The bankruptcy court reiterated that *res judicata* operates not to merely preclude those specific theories of recovery that are in fact asserted, but also operates to preclude any theory of recovery that can be asserted out of a particular set of facts. (*Id.* at 52.) This Court likewise finds that the transactional test has been met in this case.

Count III of the 1994 complaint alleges that CFC "at various times during the bankruptcy advised [Royal Meadows] and its various officers as to the amount necessary to pay the debt held by it," and that "these various representations were made by individuals who represented themselves as being authorized representatives and/or agents of [CFC]." (1994 Compl. at ¶¶ 10–11.) Royal Meadows alleged that the representations were "false, fraudulent and designed to deceive and mislead" Royal Meadows. (*Id.* at ¶ 12.) Finally, Royal Meadows asserted that the "false representations have created a situation where the remaining unsold real property is encumbered by liens ... to the detriment of [Royal Meadows] and various other creditors." (*Id.* at ¶ 14.)

To support Royal Meadows' current claim for breach of contract, it alleges the following:

that Royal Meadows negotiated a sale of the Birdsong property that was approved by the court; that as part of the sale, CFC "negotiated a sum certain $394,813.24 as full and final satisfaction of all its claims and agreed to release its liens" from the Suffolk property; that the sale was completed; CFC was paid the sum of $394,813.24; and that CFC refuses to release its liens or cancel its notes. (Compl. at ¶¶ 7–10.)

Count III of the 1994 complaint involved the same alleged set of facts as the present complaint involves. The parties agree that CFC was paid the sum of $394,813.24 on or about January 20, 1994, but they vehemently disagree as to why this particular sum was paid when it was clearly less than the principal and interest owed on the two outstanding notes held by CFC. Royal Meadows alleged then, and alleges now, that CFC negotiated this sum certain as full and final satisfaction of both its claims and agreed to release its liens from the Suffolk property, but that CFC has refused to release its liens or cancel the notes. The only difference between Count III of the 1994 complaint and the present complaint is that the previous claim is couched in language of fraud and misrepresentation, while the present claim is expressed in language of breach of contract. The underlying acts supporting these two

claims are precisely the same: Royal Meadows alleges that there were communications made by CFC stating that $394,813.24 would be sufficient to satisfy the amount of the debt, yet CFC has not released its liens on the remaining parcel.

For these reasons, the Court finds that Royal Meadows' breach of contract claim arises out of the same transaction or series of transactions as the fraud claim resolved by the court's prior judgment on December 22, 1994. The two allegations have a common origin and relationship sufficient to satisfy the transactional approach for identity of claims utilized by the Fourth Circuit.

## IV. CONCLUSION

Based on the foregoing, the decision of the bankruptcy court to grant Appellee's motion for summary judgment on the basis of *res judicata* is **AFFIRMED.**

The appellant is ADVISED that it may appeal from this final order by forwarding a written notice of appeal to the Clerk of the United States District Court, U.S. Courthouse, 600 Granby Street, Norfolk, Virginia, 23510. Said written notice must be received by the clerk within thirty (30) days from the date of this order.

The clerk is **DIRECTED** to send a copy of this order to counsel for the Appellant and counsel for the Appellee.

IT IS SO **ORDERED.**