Ronald F. KEITH, Plaintiff–Appellant,

v.

Edward C. ALDRIDGE, Jr., in his official capacity as Secretary of the Air Force, Defendant–Appellee.

No. 89–2397.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1990.

Decided April 9, 1990.

Rehearing and Rehearing En Banc Denied May 7, 1990.

George Michael Chuzi, Kalijarvi, Chuzi & Stetina, P.C., Washington, D.C., for plaintiff-appellant.

Lt. Col. Morris Adams Tanner, Jr., USAF, General Litigation Div., Office of the Judge Advocate General, Washington, D.C., for defendant-appellee.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

PHILLIPS, Circuit Judge:

Ronald J. Keith appeals from the order of the district court dismissing his civil action against appellee (the Air Force) on res judicata grounds. Keith had filed a civil action in March 1987 alleging Title VII, *see* 42 U.S.C. § 2000e–3, and Privacy Act, *see* 5 U.S.C. § 552a, violations after the Air Force terminated his employment (*Keith I*). That action was settled by agreement and dismissed with prejudice by the district court. Keith filed this second action (*Keith II*) in August 1988, alleging that the Air Force's failure to provide him with certain personnel notes violated his fifth amendment due process right. We agree with the district court that the judgment in *Keith I* precludes Keith from bringing this second action against the Air Force and therefore affirm.

## I

Keith was employed as a civilian computer specialist by the Air Force from 1974–1986. The Air Force provided notice on May 16, 1986, that it intended to terminate him for disruptive misconduct in the workplace.[1] On May 18, Keith filed Freedom of Information Act (FOIA) and Privacy Act requests to obtain all records relating to his proposed dismissal. Keith specifically sought personal data and notes collected as part of the investigation that led to the decision to terminate his employment. The Air Force responded that personal notes kept by supervisors and remaining under the control of the originator were not subject to the Privacy Act. Pursuant to FOIA, the Air Force indicated that it had provided Keith with a copy of personal data collected as part of the investigation; it had no other personal notes in its records subject to FOIA disclosure.

On June 13, the Air Force terminated Keith. He filed an administrative appeal on June 16, challenging the Air Force's failure to disclose all requested personal and investigative notes. The appeal was returned without action on the ground that no such records existed. Keith then appealed his termination to the Merit Systems Protection Board (MSPB)[2]; both an administrative law judge (ALJ) and the Board on review upheld the dismissal.

*Keith I* was filed on March 4, 1987. Keith charged that reprisals culminating in his dismissal were motivated by activity protected by Title VII of the Civil Rights Act of 1964.[3] He also alleged that the Air Force had violated the Privacy Act by fail-

ing to provide him with his supervisors' personal notes compiled and maintained as part of the investigation that led to his termination.[4] This failure allegedly deprived him of the opportunity to prepare a defense before the MSPB. He sought declaratory and injunctive relief respecting the challenged Air Force practices, release of the investigative records, general damages, reinstatement, back pay, costs, and attorney's fees. Keith eventually deposed Lt. Colonel Jack Stratford, his immediate supervisor, determined that Stratford had kept personal notes, and obtained a copy of the notes (Stratford notes) pursuant to a discovery request during the last week of scheduled discovery.

Serious settlement discussions ensued at this point, and the district court removed the case from the trial calendar. On December 1, 1987, the Air Force presented a draft settlement agreement. The agreement proposed would have released the Air Force from liability for all claims, except attorney's fees, "that were brought or could have been brought against the [Air Force] pursuant to Title VII, the provisions of the Privacy Act, the United States Constitution and relevant federal statutes and regulations." J.A. at 38. Similarly, the agreement was proposed as a "full and complete disposition of all allegations filed or that could have been filed" under Title VII, the Privacy Act, the Constitution, and federal statutes and regulations; it was not to be used otherwise than to establish settlement of such claims. *Id.* at 41, 42. Under the draft agreement, Keith would have agreed not to "seek to obtain further em-

---

1. Specifically, Keith was charged with
   (1) making malicious and disparaging statements against fellow co-workers and supervisors with intent to harm, undermine, or damage their reputation or official standing; (2) using offensive profanity within the workplace; and (3) disruptive, raucous conduct which interferes with office efficiency and productivity, and action in a manner likely to slow productivity within the office. Letter from Col. George E. Elsea, USAF, to Ronald F. Keith (May 16, 1986), Joint Appendix (J.A.) at 82.

2. *See* 5 U.S.C. § 7701.

3. In his complaint Keith alleged that "[t]he Air Force's removal of Mr. Keith was a reprisal against Mr. Keith for his having opposed both across-the-board institutionalized discriminatory employment practices and individual acts of discrimination by the Department of the Air Force." J.A. at 66.

4. Keith also charged that the Air Force had violated the Privacy Act by utilizing specified performance evaluation forms and methods designed to test and measure certain personality traits. The final count in his complaint asserted a claim for infringement of first amendment rights.

ployment" with the Air Force, and the Air Force would not be required to consider him for hire, transfer, or reassignment. *Id.* at 40–41.

Keith apparently objected to the draft settlement agreement, and the agreement ultimately signed in January 1988 was more narrowly drawn. The Air Force was released from, and the agreement recognized as a full and complete disposition of, those claims "that were filed or that could have been filed (except attorney's fees) and that were brought or could have been brought against the [Air Force] pursuant to Title VII and the provisions of the Privacy Act." *Id.* at 77, 80. The agreement was not to be used except to establish "settlement of all matters related to [Keith's] claims and release of the [Air Force] from all claims filed or that could have been filed by [Keith] concerning this action, pursuant to Title VII and the Privacy Act." *Id.* at 80. Keith agreed not to "apply for further employment" with the Air Force and to dismissal of the suit with prejudice. *Id.* at 79, 80. The Air Force agreed to remit to Keith back pay, expunge his record, and pay reasonable attorney's fees. The district court, noting the settlement pursuant to agreement of the parties, dismissed *Keith I* in an order dated February 4, 1988, specifically reserving Keith's claim for attorney's fees.

Keith filed his second action on August 9, 1988. His amended complaint alleged that the Air Force's failure to provide him with the Stratford notes effectively denied him the right to respond and to raise defenses to the termination proceedings, thereby violating his fifth amendment due process right. Keith requested declaratory and injunctive relief respecting the Air Force's challenged conduct and "equitable relief" in the form of reinstatement, back pay, expungement of his record, costs, and attorney's fees. *Id.* at 109. The Air Force moved to dismiss or in the alternative for summary judgment; Keith responded and filed a cross-motion for summary judgment. At the conclusion of a hearing on the motions, the court granted the Air Force's motion and entered an order dismissing Keith's suit. The court held that res judicata precluded Keith from bringing the second action. Analyzing the case under traditional res judicata principles, the court found identity of the parties and a final judgment on the merits in the earlier action, *Keith I.* The court also found, under *Nash City Board of Education v. Biltmore Co.,* 640 F.2d 484 (4th Cir.1981), identity of the claims in the two actions.

This appeal followed. As an initial matter, Keith argues that there is not identity of claims in his two actions, making res judicata inapplicable. Keith's principal contention, however, is that, even if the technical requirements of res judicata are met, it should not apply to preclude the second action because the parties' settlement agreement and the judgment in *Keith I* were limited to his Title VII and Privacy Act claims. We address each of these contentions in turn.

## II

■ On this appeal we are reviewing the grant of summary judgment on res judicata grounds. In doing so, we apply the same summary judgment principles applicable in the district court, but are not bound to particular theories relied upon by that court. *See generally* 10 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure: Civil* § 2716 (1983). Our review therefore is essentially a plenary one on the summary judgment record before the district court. We observe at the outset that federal law controls our assessment of the preclusive effect of the earlier federal judgment in *Keith I. See Harnett v. Billman,* 800 F.2d 1308, 1312–13 (4th Cir.1986).

The requirements for invoking res judicata to preclude a subsequent lawsuit by bar or merger (claim preclusion) are familiar ones. "As applied, the essential elements of the doctrine are generally stated to be (1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Nash City Bd. of Educ.,* 640 F.2d at 486. The critical element here is the second, identity of the causes of

action in the two suits. There is no question that the judgment in *Keith I,* though a consent judgment, was, for claim preclusion purposes, a final one on the merits. *See* 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure: Jurisdiction* § 4443 at 385 (1981) [hereinafter Wright, Miller, & Cooper].

■ Consistent with the modern trend, *see* 18 Wright, Miller, & Cooper, § 4407; Restatement (Second) of Judgments § 24 (1982), we have adopted a transactional approach to the identity of claims question— "the appropriate inquiry is whether the new claim arises out of same transaction or series of transactions as the claim resolved by the prior judgment." *See, e.g., Harnett,* 800 F.2d at 1313. Applying this test, we agree with the district court's conclusion that the causes of action in the two actions are identical. The same series of connected transactions is involved in both actions: Keith's disruptive workplace behavior led to an internal investigation, Lt. Colonel Stratford kept notes to document Keith's behavior, the Air Force terminated Keith, he sought but was unable to obtain the notes prior to discovery during *Keith I,* and his administrative appeal of the termination was denied. At the root of both actions is Keith's dismissal, the wrongful retention of the notes is challenged, under alternative Privacy Act (*Keith I*) and fifth amendment (*Keith II*) theories, and the same "operative facts" are at issue. *See* Restatement (Second) of Judgments § 24 comment b.

■ Keith's conclusory argument that the claims in his two actions do not meet this transactional test is without merit. He contends that the claims involved are not the same because *Keith I* was concerned with the validity of the Air Force's collection of information on employees and the motivation for his termination, whereas *Keith II* allegedly concerns only the conduct of his administrative hearing and its consistency with due process requirements.

It is quite clear, however, that facts surrounding the making and the retention of the Stratford notes were critical to Keith's Privacy Act claim in the first suit and to the due process claim in the second suit. Keith's argument does nothing to undermine the proper characterization of the events at issue in both suits as a series of connected transactions for res judicata purposes.[5] Thus unless an exception to the general rules of res judicata applies, the judgment in *Keith I* precludes Keith from bringing this second action against the Air Force.

### III

■ The law does recognize an exception to the normal application of claim preclusion principles when the parties have agreed to the splitting of a single claim. "Express agreement" between the parties that litigation of one part of a claim will not preclude a second suit on another part of the same claim is normally honored by courts. *See* 18 Wright, Miller, & Cooper, § 4415, at 124. The parties may be able to settle part of the claim only if another part is left free for later assertion. *See id.* The Restatement goes even further, recognizing an exception when the "parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein." Restatement (Second) of Judgments § 26(1)(a). Since a principal purpose of the general rule of res judicata is to protect the defendant from the burden of relitigating the same claim in different suits, consent, "in express words or otherwise," to the splitting of the claim prevents the defendant from invoking claim preclusion. *Id.* comment a.

■ When a consent judgment entered upon settlement by the parties of an earlier suit is invoked by a defendant as preclusive of a later action, the preclusive effect of the earlier judgment is determined by the intent of the parties. *See* 18 Wright, Mil-

---

5. Keith emphasizes that he was unaware until the close of discovery in *Keith I* of the existence of the Stratford notes. For res judicata purposes, however, it is the existence of the claim, not awareness of it, that controls. *See Harnett,*

800 F.2d at 1313. If Keith is attempting to invoke the exception to this rule for fraud or concealment, *see* Restatement (Second) of Judgments § 26 comment j, we reject that attempt.

ler, & Cooper, § 4443 at 384. *See generally* James, *Consent Judgments as Collateral Estoppel*, 108 U.Pa.L.Rev. 173 (1959). This approach, following from the contractual nature of consent judgments, dictates application of contract interpretation principles to determine the intent of the parties. If the parties intended to foreclose through agreement litigation of a claim, assertion of that claim in a later suit, whether or not formally presented in the earlier action, is precluded. *See* 18 Wright, Miller, & Cooper, § 4443, at 386–87. Claim preclusion will not apply, however, if the parties intended to settle only one part of a single claim and intended to leave another part open for future litigation. Although "[p]reclusion is most apt to be denied as to new claims that are found not to lie within the terms of the settlement," the parties' controlling intent may confirm that a consent judgment bars claims outside the four corners of the settlement agreement. *See* 18 Wright, Miller, & Cooper, § 4443, at 387.

■ We conclude as a matter of law that the parties in *Keith I* mutually manifested their intentions, *see Restatement (Second) Contracts* § 2, comment b (1981), to settle not only the specific Privacy Act and Title VII theories of liability alleged in that action, but also to preclude any future litigation having the objective of obtaining Keith's reemployment with the Air Force. We first note that the settlement agreement and the dismissal order entered pursuant to it do not expressly reserve to Keith the right to raise due process or other substantive claims in subsequent litigation. In contrast, both the agreement and the dismissal order expressly reserve Keith's claim for attorney's fees. Without question, Keith knew how to preserve a claim for future litigation, and he apparently persuaded the Air Force to limit their ability to assert res judicata against such a claim in a later suit.

The settlement agreement signed by the parties, fairly and objectively interpreted, manifests an intent to completely close the book on Keith's employment with the Air Force. The Air Force agreed to expunge Keith's record of all negative references,

substitute his resignation for the removal action, and limit all requests for information regarding his employment to the expurgated personnel file. Back pay was carefully calculated and documented in the agreement. And the litigation itself was closed, with Keith agreeing to dismiss the case with prejudice and pay his own costs and the Air Force agreeing to pay reasonable attorney fees.

Keith thus negotiated substantial benefits in exchange for dismissing the first action, and he makes no claim that he has not secured the benefit of his bargain. As part of the bargain, he also agreed not to "apply for further employment" with the Air Force. Yet, the principal relief sought by Keith in this case that he did not obtain in *Keith I* is reinstatement with the Air Force. The Air Force certainly believed that Keith was agreeing that he would not in any way attempt to obtain future employment with the Air Force. *See* J.A. at 99–100 (affidavit of Lt. Colonel Thomas Strand). Keith could have made clear in the agreement his reservation of the right to seek reemployment with the Air Force; the agreement itself evinces no such intent.

Keith argues, not without some force, that the changes between the draft agreement proposed by the Air Force and the agreement eventually signed indicate that the parties agreed to settle *only* the Title VII and Privacy Act claims. We agree that the agreement signed is more narrowly drawn, and there is evidence in the record indicating that Keith's objections to some of the broad language in the draft agreement are reflected in the final document agreed to by the parties. In effect, he argues, the Air Force agreed to the splitting of the Title VII and Privacy Act claims from other claims arising out of his termination. Keith asks this court not to grant the Air Force the benefit of a bargain it could not obtain through negotiation in *Keith I.*

This argument by negative implication, however, ultimately fails. The Air Force expressed no clear consent to future litigation arising from the connected series of transactions involving Keith's termination.

If Keith negotiated such consent, he should have made sure that the agreement reflected it. *See Harnett,* 800 F.2d at 1311 (settlement agreement in earlier suit permitted plaintiff to pursue state law claim in state court). Rather than expressly reserving Keith's right to bring a due process claim, or any other claim that might enable him to obtain reemployment with the Air Force, the agreement precludes Keith from applying for further employment. That the parties agreed to this language rather than language proposed by the Air Force does not indicate that they agreed that Keith was free in the future to seek reinstatement with the Air Force on different legal grounds. We thus remain unpersuaded by Keith's argument that the parties agreed to allow him to split his claim and relitigate under a different legal heading his attempt to gain reinstatement with the Air Force. *See Medina v. Wood River Pipeline Co.,* 809 F.2d 531, 534 (8th Cir. 1987).

### IV

The order of the district court dismissing with prejudice *Keith I* was a final judgment on the merits for res judicata purposes and precludes Keith from bringing this action on the same claim against the same defendant, the Air Force.[6] We therefore affirm the judgment of the district court dismissing this action.

AFFIRMED

---

**6.** Because we hold that Keith was precluded from bringing this second action against the Air Force, we need not determine whether the district court would have jurisdiction to grant

Keith all the relief he requested in this action. *See Hostetter v. United States,* 739 F.2d 983, 985 (4th Cir.1984).