UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA, ex rel.
Harold E. Bondy, M.D.,
                    *Plaintiff-Appellant,*

            v.

CONSUMER HEALTH FOUNDATION;
HUMANA GROUP HEALTH PLAN,
INCORPORATED; KAISER FOUNDATION
HEALTH PLAN OF THE MID-ATLANTIC
STATES, INCORPORATED,                                   No. 00-2520
                    *Defendants-Appellees,*

            and

KAISER PERMANENTE, INCORPORATED,
                            *Defendant,*

            and

UNITED STATES OF AMERICA,
                    *Party in Interest.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-00-107-A)

Argued: September 25, 2001

Decided: November 9, 2001

Before WIDENER, NIEMEYER, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Alan Mark Grayson, GRAYSON & KUBLI, P.C., McLean, Virginia, for Appellant. Kathleen Heenan McGuan, REED SMITH, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Jacqueline E. Bennett, REED SMITH, L.L.P., Washington, D.C.; James P. Holloway, Megan Tinker, PROSKAUER ROSE, L.L.P., Washington, D.C.; David W. O'Brien, CROWELL & MORING, L.L.P., Washington, D.C., for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Dr. Harold Bondy commenced this *qui tam* action on behalf of the United States against the successors to Group Health Association,[1] a health maintenance organization ("HMO"), for submitting false claims to the United States in violation of the False Claims Act, 31 U.S.C. §§ 3729-34. He also alleged that Group Health Association terminated his employment as a doctor in retaliation for his investigating the claim. On cross-motions for summary judgment, the district court entered judgment in favor of the defendants on the grounds that (1) Bondy's evidence failed to establish that Group Health Association submitted any false claims to Medicare, and (2) Bondy's retaliation claim was barred by *res judicata* in that Bondy previously sued Group Health Association unsuccessfully in connection with the same termination of employment. We affirm.

---

[1]The assets of Group Health Association were transferred through various transactions to Consumer Health Foundation, Humana Group Health Plan, Inc., and Kaiser Permanente, Inc., all of whom Bondy named as defendants.

## I

Bondy commenced this action against the successors of Group Health Association (collectively "GHA") in December 1998, alleging in two counts that GHA, as an HMO, submitted false claims to Medicare for the years 1988 through 1994 by failing to give Medicare credits on "cost reports" submitted to Medicare for reimbursement that GHA received from its patients' private insurers. He claimed that by receiving double payment for health care services rendered — one payment from Medicare and one from the private insurers — GHA violated regulations requiring that GHA give Medicare credit for private insurance reimbursements and defrauded the United States by submitting false claims for reimbursement. The complaint alleged in the third count that GHA terminated Bondy's employment in retaliation for investigating the claim. The United States declined to take over the case, and Bondy has pursued it individually.

At the close of discovery, the district court granted summary judgment in favor of GHA on all three counts. With respect to the false claim counts, the court concluded that Bondy had "not made out a case for GHA's liability under the False Claim Act" because he "ha[d] no evidence that GHA submitted false claims, nor ha[d] he identified what those claims are." Specifically, the court found that two methods of accounting for third-party insurer payments were available and Bondy could not exclude the possibility that GHA had used one of those methods properly. With regard to the third count for retaliatory termination, the court concluded that it was barred by *res judicata*.

To treat its Medicare patients, GHA entered into a contractual arrangement with the Health Care Financing Agency ("HCFA"), the agency charged with administering Medicare. Under the arrangement, GHA was paid a fixed monthly fee for each of its Medicare patients. But at the end of the year, GHA was required to account for its actual costs incurred in treating the Medicare patients during the year by filing "costs reports." If GHA incurred more expenses than it received through the payment of fixed fees, HCFA would reimburse GHA that amount. On the other hand, if GHA incurred less expenses, it would refund the excess fees to HCFA.

As part of the cost reports, GHA had to give HCFA credit for sums received by GHA on behalf of its patients from third-party private

insurers. Bondy contends that in accounting to HCFA, GHA did not give HCFA credit for approximately $38 million worth of payments received from private insurers on behalf of GHA's Medicare patients.

Gary Donner, who was a GHA consultant and who was designated as GHA's expert witness, testified that there are two acceptable methods for accounting to HCFA for the third-party payments, and he stated that "either method is acceptable to Medicare." Both involved calculation of an "apportionment statistic" which divides costs attributable to Medicare and non-Medicare patients. In this case, Donner indicated that GHA had employed the second method.

Bondy contended that neither method was appropriate and that the accounting for third-party payments must be included on the face of the cost reports submitted to Medicare and not buried within constituent calculations.

Because GHA was suffering from financial difficulties in the early 1990s (and unrelated to the present dispute), HCFA initiated an independent audit of GHA's cost reports for the years 1988 through 1994. With respect to the reports covering the years 1988 through 1991, the independent auditor's report states:

> There are several revenue accounts that [GHA] is not properly offsetting against expenses, as required by the Provider Reimbursement Regulations. In addition, [GHA] does not maintain records that detail the sources of these revenue accounts that would allow them to be directly offset against the related expenses. These third-party accounts include . . . Third Party COB [coordination of benefits] Reimbursement.

>                    *      *      *

> We did not propose an adjustment to [GHA's] expenses for these offsets because our test indicated that such an adjustment would not significantly alter reimbursable costs.

Thus, the auditor found some problems with GHA's accounting methods but did not believe those problems warranted any formal adjust-

ment. As a result of the independent audits, HCFA and GHA signed a settlement agreement based on the final reimbursement figures for those years.

Bondy was a staff physician at GHA from 1975 until 1992, and in 1991 he was named GHA's physician of the year. In addition to his employment with GHA, Bondy maintained a medical practice on the side, which GHA permitted within certain limitations. In September 1992, Bondy received a memorandum from GHA directing that Bondy send GHA a payment that Bondy had received from Blue Cross/Blue Shield for treating a patient who Bondy contended was part of his private practice. As a result of this memorandum and subsequent discussions with GHA, Bondy began to suspect that GHA was double billing HCFA for work done by its physicians. GHA, on the other hand, suspected that Bondy was diverting patients to his private practice, in violation of his arrangement with GHA. Based on this violation, GHA terminated Bondy's employment on December 29, 1992.

Bondy filed an action against GHA for wrongful termination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34. Because of his failure to respond to a motion for summary judgment, however, judgment was entered against Bondy in that action.

Despite his termination, Bondy continued his investigation into GHA's billing practices for seven years, talking with several former GHA employees and requesting documents from the United States under the Freedom of Information Act, 5 U.S.C. § 552. The district court considered all of the testimony, documents, and other information collected by Bondy in ruling on cross-motions for summary judgment filed by the parties. In connection with Bondy's claims under the False Claims Act, the court concluded that Bondy had failed to advance facts sufficient to establish that GHA had made false claims to Medicare. And in connection with Bondy's claim that his employment was terminated in retaliation for his investigation, the court concluded that Bondy's prior suit for age discrimination barred his filing another action for wrongful termination. This appeal followed.

## II

Bondy contends first that the district court erred in entering summary judgment against him on his claims under the False Claims Act because he advanced sufficient facts, which, if resolved in his favor at trial, would entitle him to relief under the False Claims Act.[2] Our examination of the record, however, leads us to the same conclusion reached by the district court.

First, neither of Bondy's two expert witnesses — Phil Hefner and Dave Cotton — was able to advance Bondy's case because neither was able to testify that GHA had actually submitted false claims to Medicare. Hefner testified in his deposition that he had never filed a Medicare cost report on behalf of an HMO, audited a cost report, or reviewed the audit of a cost report. He also conceded that he is not an expert in cost reporting or in how third-party reimbursements impact cost reporting. Finally, he admitted that, without reviewing more of GHA's claims, he could not state that GHA's Medicare reporting was false or illegal. Cotton was similarly unhelpful to Bondy's case. Cotton's expert report stated that he only reviewed HCFA regulations and Bondy's amended complaint (with attachments) in drawing his conclusions. Thus, he was working with a limited understanding of how GHA prepared its cost reports. He testified during his deposition that it was unclear from GHA's cost reports whether or not it had offset third party revenue properly, but he did not testify that GHA had *not* done so. Furthermore, Cotton testified that he could not determine from his examination of the cost reports whether there was any double billing and that he could not offer an opinion as to whether GHA had actually engaged in double billing.

---

[2]GHA challenges our jurisdiction to consider Bondy's claims under the False Claims Act, arguing that (1) the claims are based on "public disclosures," and (2) Bondy was not the "original source" of the information. 31 U.S.C. § 3730(e)(4). It argues that information that Bondy obtained through FOIA amounts to "public disclosures." FOIA information, however, is not among the items listed in § 3730(3)(4)(A) as "public disclosures" and therefore does not operate as a jurisdictional bar. *See United States ex rel. Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 870 (4th Cir. 1999) (holding that the list of sources in § 3730(c)(4) is "exclusive").

Second, Bondy's three main fact witnesses were similarly unable to testify that GHA had submitted false claims to HCFA because none of them were involved with, nor had any concrete knowledge of, the preparation of GHA's final submissions to HCFA. Cynthia Wilson was the former assistant supervisor in GHA's coordination of benefits unit. She testified at her deposition that GHA would receive refund checks "two to three" times a week from third-party insurers and rather than sending them to the "Medicare section" that handled Medicare third-party reimbursement, the checks were deposited into GHA's general account. When Wilson raised a question about this with her supervisor, Ted Weinberger, Weinberger told her, "Do as you are told. I am your boss." Although unexplained, the deposit of third-party checks in the general account does not suggest they were not accounted for, and this evidence does not advance Bondy's claims. His claims depend on the truthfulness of GHA's accounting to HCFA and Wilson's testimony does not go to that issue.

Bondy relies heavily upon the statements of Margaret Gary who was also a former GHA supervisor in its coordination of benefits unit. Sometime during 1996 or 1997, Bondy telephoned Gary at home, secretly tape-recording the conversation.[3] During the conversation, Gary stated that GHA received payments from Medicare as well as from fee-for-service third-party insurers but did not inform Medicare that GHA had received the second payment, believing this to be a "double charge." She also stated that she had raised this issue with Weinberger. At her deposition, however, Gary repudiated these statements, stating she was intoxicated when she made them. Moreover, while the statements, taken alone, suggest the possibility of wrongdoing, there is no evidence to support actual wrongdoing. The district court found that Gary was not involved with the preparation of the cost reports and did not know how third-party payments were included in those reports. Thus, she did not have any first-hand information about how GHA billed Medicare or apportioned its revenue.

Bondy's third fact witness, Arun Potdar, who was an accountant in charge of preparing GHA's original cost reports for the years 1988

---

[3]GHA argues that this conversation was inadmissible hearsay. Because we find that this conversation does not help Bondy's case, we do not reach the hearsay issue.

through 1991, testified that when he saw Donner's revised reports, he "had a suspicion." The revised reports submitted for those years did not contain third-party offsets even though the original versions of those reports explicitly showed them. He believed that the revised method of preparing the cost reports "was like adding $4 to $6 million to [GHA's] annual reimbursement" and that this result "surprised" him. He testified that the only way to change the reimbursement figure from what he had originally included in the cost reports was to "manipulate[ ] the numbers." Although the revised cost reports raised Potdar's suspicions, Potdar was unable to testify that GHA submitted any false or fraudulent information to Medicare. Indeed, Potdar did not work in GHA's accounting department when the revised cost reports were prepared. Although Potdar's testimony, like that of Wilson and Gary, may raise some question about GHA's reporting methods, he could not testify as to any specific fraudulent activity or claim by GHA. He was not involved with the preparation of the revised cost reports for 1988 through 1991 nor with the cost reports submitted for 1992 through 1994, and he offers no testimony or documentary evidence that disputes GHA's statement that GHA effectively used the "apportionment statistic" method for accounting for the third-party payments, even though it did not reveal an explicit offset.

In addition to the testimony of these five witnesses, Bondy presented substantial documentary evidence in support of his claims, notably the original and revised cost reports. It is undisputed that there was a difference between those two reports of several million dollars and that this difference arose from the offsetting of third-party revenue by GHA. The issue that remains, however, is whether GHA properly offset or included the third-party revenues in their calculation of Medicare reimbursements. The defendants posit that their calculation of the "apportionment statistic" properly accounted for those revenues. They also state in their brief that HCFA "approved" of the calculation method chosen by GHA.

The record, however, is devoid of any statements by HCFA that specifically approved of GHA's methods or, for that matter, anything that documents GHA's methods. The only explicit reference in the record that HCFA approved of GHA's methods were statements by Donner who both worked and testified as an expert witness for GHA. The burden in this case, however, is not on GHA to show that HCFA

approved of GHA's apportionment statistic method but on Bondy to show that HCFA disapproved of that method or that the method chosen was not in accordance with HCFA's established procedures. As the district court concluded, he cannot do either.

The independent auditor who reviewed GHA's revised reports for 1988 through 1991 did conclude that GHA "is not properly offsetting" some revenue and that GHA did not "maintain records that detail the sources of these revenue accounts" that would permit for proper offsetting of that revenue. But the auditor did not propose any adjustment based on those failures. For the 1992 through 1994 cost reports, the auditor initially recommended an adjustment but, upon receipt of some documentation from GHA, withdrew that recommendation. Furthermore, GHA and HCFA entered into a binding settlement agreement based on the final reimbursement figures. Bondy does not present any evidence that would indicate why this settlement agreement should not permit a reasonable inference that HCFA approved of GHA's methods.

In sum, although the documentary evidence, like the testimonial evidence, may have created some suspicion about GHA's accounting methods, Bondy was unable to provide the district court with evidence sufficient to carry his burden of showing that GHA submitted a false claim to Medicare or even to rebut the inference to be drawn from HCFA's acceptance of GHA's accounting. None of his evidence can move beyond "mere speculation." *See Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (holding that, for purposes of defeating a motion for summary judgment, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another"). Therefore, we affirm the district court's order grating summary judgment for GHA on the first two counts of Bondy's complaint.

## III

Bondy also contends that the district court erred in entering summary judgment on his retaliation claim, filed under 31 U.S.C. § 3730(h). The court found that claim barred by *res judicata*.

The three elements of *res judicata* are well established. *See Shoup v. Bell & Howell*, 872 F.2d 1178 (4th Cir. 1989). First, the parties in

the prior litigation and the subsequent litigation must be the same or in privity with each other. *Id*. at 1179. Second, the claims in the subsequent litigation "must be substantially the same as those in the prior litigation." *Id*. Third, the prior litigation must have "resulted in a judgment on the merits." *Id*.

The parties in Bondy's claim of age discrimination against GHA filed in 1995 are the same or are in privity with the parties in this case. In the present case, the defendants are Consumer Health Foundation, Humana Group Health Plan, Inc., and Kaiser Permanente, Inc. In the prior litigation, the defendants were GHA and Humana; Consumer Health and Kaiser are successors-in-interest to GHA. Therefore, the parties are in privity with each other. Bondy argues that the parties are not the same for the purposes of *res judicata* because in a *qui tam* action, the real party-in-interest is the United States. But 31 U.S.C. § 3730(h) authorizes claims based on retaliatory terminations by *employees* themselves, not by the United States *on behalf of* the employees. Thus, Bondy, as an employee, not the United States, is the real party-in-interest.

The claims in the two suits are also "substantially the same." Although age discrimination and retaliatory termination suits are based on different statutory violations, the inquiry is whether the two suits "'arise[ ] out of the same transaction or series of transactions.'" *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990) (quoting *Hartnett v. Billman*, 800 F.2d 1368, 1373 (4th Cir. 1986)). In this case, the same transaction is involved — Bondy's termination — and *res judicata* bars relitigation not only of every claim actually presented in the prior litigation but also "every claim that might have been presented." *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996). There can be no question about Bondy's right to have asserted the retaliation claim in 1995, as he had already begun investigating GHA's billing practices when he was terminated.

Finally, the prior judgment against Bondy was "on the merits." Bondy contends otherwise. In the earlier age discrimination suit, the district court granted summary judgment for the defendants because Bondy failed to submit a response to the defendants' motion for summary judgment. While a careful examination of Bondy's claim on the merits may not therefore have occurred, the judgment was neverthe-

less on the merits. It is well settled that grants of summary judgment are considered "on the merits" for the purposes of *res judicata*. *Shoup*, 872 F.2d at 1181. Indeed, for purposes of *res judicata*, default judgments are considered to be "on the merits." *Credit Alliance Corp. v. Williams*, 851 F.2d 119, 122 (4th Cir. 1988).

Because the three elements of *res judicata* are met here, we affirm the district court's grant of summary judgment for the defendants on Bondy's third count.

For the reasons given, the judgment of the district court is

*AFFIRMED*.