**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-1362**

SUNDERSINGH BALA,

             Plaintiff – Appellant,

        v.

COMMONWEALTH OF VIRGINIA DEPARTMENT OF CONSERVATION AND
RECREATION,

             Defendant – Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.  Henry E. Hudson, District
Judge.  (3:12-cv-00748-HEH)

Argued: May 13, 2015                Decided: June 25, 2015

Before TRAXLER, Chief Judge, and WILKINSON and FLOYD, Circuit
Judges.

Affirmed by unpublished opinion.  Judge Wilkinson wrote the
opinion, in which Chief Judge Traxler joined.  Judge Floyd wrote
a dissenting opinion.

**ARGUED:** Scott Gregory Crowley, Sr., CROWLEY & CROWLEY, Glen
Allen, Virginia, for Appellant.  Gregory Clayton Fleming, OFFICE
OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for
Appellee.  **ON BRIEF:** Mark R. Herring, Attorney General of
Virginia, Rhodes B. Ritenour, Deputy Attorney General, Ronald N.
Regnery, Senior Assistant Attorney General, OFFICE OF THE
ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WILKINSON, Circuit Judge:

Sundersingh Bala brought a Title VII claim for retaliatory discharge against the Commonwealth of Virginia Department of Conservation and Recreation ("DCR"). The district court granted summary judgment to the DCR because Bala released this claim in a July 7, 2011, Settlement Agreement. We affirm the trial court's holding that the Settlement Agreement included the retaliatory discharge claim. Having obtained the benefit of his bargain, Bala cannot now seek a remedy from the courts after knowingly and voluntarily relinquishing the underlying claim.

I.

Bala is a naturalized United States citizen of East Indian origin who joined the DCR's accounting department in 1985. Since that time, he has filed numerous employee grievances with the Department of Employee Dispute Resolution ("EDR") alleging, among other things, that the DCR refused to promote him for discriminatory reasons. Most recently, he filed two related grievances: one in May 2009, alleging that the DCR failed to select him for the DCR's Accounts Payable Supervisor position owing to discrimination against his age and national origin; and another in October 2009, alleging that his September 2009 termination (effective December 31, 2009) violated internal Department of Human Resource Management ("DHRM") layoff policies, discriminated against him because of his age and

3

national origin, and retaliated against his prior protected allegations of discrimination. J.A. 370.

Bala's termination was part of a series of layoffs pursuant to an overall budget reduction for state agencies. Bala did not volunteer for early retirement and was not suggested for termination by his supervisors, but was nevertheless included on a list of employees under consideration for termination and eventually selected to be laid off. He alleged in his grievance, and later in his complaint, that he was selected for involuntary termination in retaliation for his numerous complaints of discrimination in grievances and court proceedings.

Employees of Virginia's state agencies who have employment complaints file grievances with the EDR as part of a statutorily created dispute resolution process. The grievances are first reviewed by management in a three-step internal review process. Employees who are dissatisfied with the resolution of their grievances after this process may request a hearing with a neutral arbiter. The hearing officer's decision is appealable to Virginia state circuit court if the employee believes the decision is contrary to law. Va. Code Ann. § 2.2-3006.

The initial three-step review of Bala's May and October 2009 grievances, consolidated at his request, J.A. 290-293, found that DCR had not discriminated, retaliated, or failed to follow the DHRM policy governing layoffs. Displeased with this

4

result, Bala requested and was granted a hearing. The administrative review of his grievances on February 1, 2011, found that the DCR had violated the DHRM's policies (without reversing the other findings), and the hearing officer directed DCR to reinstate Bala to his former position. J.A. 372-374.

Meanwhile, Bala had already resumed work with the DCR as an hourly employee starting in February 2010, and had been receiving early retirement benefits since his termination. Both his hourly wages and the early retirement benefits would have been offset against any back pay he was due upon reinstatement. So instead of pursuing reinstatement, Bala and the DCR "concluded that it would be in their best interests to resolve this situation by agreement," and they consequently negotiated a settlement agreement on July 7, 2011. J.A. 46.

Under the terms of the agreement, the agency agreed to not seek revocation of Bala's enhanced retirement and related benefits, and to maintain his hourly position for at least three years as long as his job performance was satisfactory. J.A. 47. In return, Bala agreed to "waive any rights accorded to him pursuant to the hearing officer's decision of February 1, 2011, including his reinstatement to his former salaried position." Id. The agreement applied to "the grievance dated October, 2009 and/or case # 9295 Hearing officer final decision issued on February 1, 2011." Id. The parties declared that each had an

5

opportunity to seek counsel, and that the terms had been carefully read, fully understood, and agreed to voluntarily. Id.

On October 23, 2012, however, Bala initiated this civil action alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 and -3, for discrimination and retaliation based on his race and national origin. The complaint contained a count of discrimination and a count of retaliation against the DCR for both refusing to interview Bala for a grants manager position in 2011 and involuntarily terminating him in the layoffs in 2009. The district court granted a 12(b)(6) motion to dismiss on all counts. Bala v. Commonwealth of Va. Dep't of Conservation & Recreation, No. 3:12CV748, 2013 WL 53744, at *1-2 (E.D. Va. Jan. 3, 2013). On appeal, we upheld the dismissal of the discrimination claim for Bala's layoff, but reversed on the other three counts for "consider[ing] DCR's proffered legitimate nondiscriminatory reasons at a procedurally improper time, within the context of a Rule 12(b)(6) motion." Bala v. Commonwealth of Va. Dep't of Conservation & Recreation, 532 F. App'x 332, 335 (4th Cir. 2013).

On remand, Bala amended his complaint to allege only the retaliatory discharge claim. He claimed his layoff was in retaliation for his numerous grievances and court filings "complaining of race, national origin and age discrimination" --

6

in particular his May 2009 grievance for failing to interview him for an Accounts Payable Supervisor position. J.A. 11-2, 16. After oral argument and supplemental briefing on the Settlement Agreement, the district court granted DCR's motion for summary judgment on the grounds that the Settlement Agreement precluded Bala from bringing the claim. Bala v. Commonwealth of Va. Dep't of Conservation & Recreation, No. 3:12CV748, 2014 WL 1281235, at *1, *5 (E.D. Va. Mar. 27, 2014). We now affirm the judgment.

## II.

Title VII of the Civil Rights Act of 1964 protects employees from harms caused by an employer's discriminatory or retaliatory actions. While litigation of such claims remains the ultimate option, the statute itself selected "[c]ooperation and voluntary compliance" as the "preferred means" for eliminating unlawful discrimination. Alexander v. Gardner-Denver Co., 415 U.S. 36, 44 (1974).

To that end, Congress created the Equal Employment Opportunity Commission ("EEOC") as a mechanism "to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit." Id. Consistent with that purpose, the EEOC maintains a preference for "voluntary and expeditious resolution of disputes" between employers and employees through settlement. Admin. Exemption Allowing for Waivers Under the ADEA, 50 Fed. Reg. 40,870,

7

40,870-40,871 (proposed Oct. 7, 1985) (comparing ADEA and Title VII claims). Waiver of Title VII claims through settlement, therefore, is authorized, provided the waiver is knowing, voluntary, and part of a bargain that resolves the underlying employment discrimination dispute. See Alexander, 415 U.S. at 52 & n.15; Keith v. Aldridge, 900 F.2d 736, 741 (4th Cir. 1990).

We must therefore determine whether Bala and the DCR's Settlement Agreement effected a waiver of Bala's retaliation claim. "Settlement agreements operate on contract principles, and thus the preclusive effect of a settlement agreement 'should be measured by the intent of the parties.'" Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 211 (4th Cir. 2009); see also First Sec. Fed. Sav. Bank, Inc. v. McQuilken, 480 S.E.2d 485, 487 (Va. 1997). Where the parties' intent is clear from the unambiguous terms of the contract, construed as a whole, we need not and cannot resort to extrinsic evidence of intent. See Goodman v. Resolution Trust Corp., 7 F.3d 1123, 1126 (4th Cir. 1993); W.D. Nelson & Co. v. Taylor Heights Dev. Corp., 150 S.E.2d 142, 145 (Va. 1966).

The Settlement Agreement stated plainly that "the parties have concluded that it would be in their best interests to resolve this situation by agreement." J.A. 46. The "situation" referenced in that provision is described immediately before it -- Bala was laid off, filed the October 2009 grievance, and

8

pursued administrative review until he was awarded reinstatement by a hearing officer. Id. Furthermore, the Agreement stated clearly that it applied to the October 2009 grievance and/or the hearing officer's final decision on February 1, 2011. J.A. 47. These documents, therefore, were incorporated by reference as if included in the contract itself. See W.D. Nelson & Co., 150 S.E.2d at 146 ("Writings referred to in a contract are construed as a part of the contract for the purpose and extent indicated."). Finally, Bala explicitly waived any rights related to or flowing from that February 1, 2011, decision, specifically including the right to reinstatement to his former position. J.A. 47.

There can be no doubt that this Settlement Agreement addressed and resolved the matter now alleged in Bala's Title VII retaliation claim. By its plain language, the Agreement covered "the grievance dated October, 2009 and/or case # 9295 Hearing officer final decision issued on February 1, 2011." J.A. 47. The October 2009 grievance alleged misapplication of the agency's layoff policies, discrimination, and retaliation for prior charges and grievances, resulting in Bala's termination. J.A. 370. That the hearing officer only reversed the claim of violating agency policy does not magically remove the other claims from the proceedings. The agency's alleged retaliation, in the form of laying him off, is the crux of Bala's only

9

remaining claim in his Title VII complaint. See J.A. 16-17. The complaint clearly describes the same "situation" that both parties thought best to resolve by agreement. By so agreeing, Bala waived the right to resurrect his retaliation claim and reinstatement remedy in later litigation.

Bala cannot obtain through litigation what he voluntarily relinquished in the Settlement Agreement for good consideration. The relief sought in the grievance was reinstatement to his former position, with back pay and benefits. J.A. 370. He was granted this relief in the administrative review, and chose to negotiate away that specific remedy in order to retain his early retirement benefits and secure his hourly job for the next three years. J.A. 46-47. Now he seeks to obtain through judicial action the same remedy that he voluntarily forfeited in the Settlement Agreement. J.A. 17. He could have expressly reserved the right to bring the retaliation claim at a later time, but declined to do so. See Keith, 900 F.2d at 741. Bala negotiated his terms and obtained the benefit of his bargain. He cannot now claim what he earlier relinquished.

We thus hold that the Title VII claim for retaliation was unambiguously included in Bala's July 7, 2011, Settlement Agreement with the DCR, and that therefore he is precluded from

10

bringing that claim now in order to achieve a second bite at the apple.

<u>AFFIRMED</u>

FLOYD, Circuit Judge, dissenting:

This appeal presents a straightforward question regarding the scope of the parties' release. In the governing agreement, Bala agreed "to waive any rights accorded to him pursuant to the hearing officer's decision of February 1, 2011." J.A. 47. It is undisputed that the only "right" awarded to Bala in the February 2011 decision was reinstatement to his former position at the DCR. And the hearing officer granted Bala this right only because the DCR failed to follow its own internal layoff policies; the officer did not address Bala's additional claims under Title VII.

Yet, the majority concludes that the release also precludes Bala from pursuing his Title VII retaliation claim in federal court. This result would be correct if the release stated that Bala agreed to waive "any and all claims related to his employment" with the DCR. But that is not what the Agreement-- drafted by the DCR--says. By holding otherwise, the majority transforms the narrow, specific release at issue into a general release broadly precluding all claims brought in the October 2009 grievance. The parties were certainly free to negotiate and agree to such a release. But nothing in the plain language of the Agreement suggests they actually did so here. Accordingly, I respectfully dissent.

I.

It is well-settled that an employee may release a cause of action under Title VII if the employee's consent to settlement is "voluntary and knowing." Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 n.15 (1974). But circuits diverge on what an assessment of voluntariness and knowledge entails: some look solely to principles of contract interpretation, while others evaluate the totality of the circumstances surrounding a purported release. See Pierce v. Atchison, Topeka & Santa Fe Ry. Co., 65 F.3d 562, 570 (7th Cir. 1995) (collecting cases). Under either approach, however, the clarity of a purported waiver's language is significant. Compare O'Shea v. Commercial Credit Corp., 930 F.2d 358, 362 (4th Cir. 1991) (considering this split and determining that the "better approach is to analyze waivers of ADEA claims under ordinary contract principles"), superseded by statute, 29 U.S.C. § 626(f), with Beadle v. City of Tampa, 42 F.3d 633, 635 (11th Cir. 1995) (listing factors relevant in assessing the totality of the circumstances, including "the clarity of the agreement"). And although the Fourth Circuit lacks binding precedent on which approach governs releases of Title VII claims, see Randolph v. Caruso Homes, Inc., No. RWT-13-2069, 2014 WL 4661985, at *4 n.6 (D. Md. Sept. 16, 2014), we need not decide that issue, as the

13

Agreement's plain language compels one result under either approach.

Here, the plain language of the Agreement unambiguously demonstrates that the parties agreed only to a limited release that did not include Bala's Title VII claim. Although we must derive the parties' intent from the instrument viewed as a whole, Atalla v. Abdul-Baki, 976 F.2d 189, 193 (4th Cir. 1992), Section 4 of the Agreement is the only section that defines the scope of the release. That section limits Bala's release to "any rights accorded to [Bala] pursuant to the hearing officer's decision of February 1, 2011, including his reinstatement to his former salaried position."* J.A. 47. Significantly, the only right accorded to Bala pursuant to the February 1 decision was

---

* This language stands in stark contrast to the broad language typically used in general releases of Title VII claims. See, e.g., Smith v. Amedisys Inc., 298 F.3d 434, 441-42 (5th Cir. 2002) (finding Title VII claims clearly waived by an employee's agreement "to release [the employer] of any and all employment related claims"); Stroman v. W. Coast Grocery Co., 884 F.2d 458, 460-61 (9th Cir. 1989) (finding clear waiver of Title VII claims based on a provision stating that the agreement's "terms represent a full and final settlement of any and all claims arising out of [the employee's] employment with [his employer]"; Pilon v. Univ. of Minn., 710 F.2d 466, 467-68 (8th Cir. 1983) (finding clear waiver of a Title VII claim in a provision in which a graduate student released the university "from any and all manner of action . . . which [the plaintiff] ever had"); Anderson v. Garbage Disposal Serv., No. 3:00CV294-MU, 2000 WL 33912330, at *1 (W.D.N.C. Dec. 18, 2000) (finding clear waiver of a Title VII claim in a provision in which the plaintiff "released and forever discharged [the employer] of and from any and all actions related to Plaintiff's employment" (brackets omitted)).

14

the "specific remedy," Maj. Op. at 10, of reinstatement to his former (or a similar) position. And that right was based only on his having proved his claim that the DCR "did not comply with the terms and conditions of the Commonwealth of Virginia Layoff Policy and Procedure Number 1.30." J.A. 373-74. Thus, I believe the release clearly applies only to Bala's right to reinstatement for the violation of administrative policy, and I would reverse the district court's grant of summary judgment.

## II.

Rather than conduct a straightforward analysis, the majority contorts the Agreement and errs in four main respects.

First, the majority erroneously declares that "Bala explicitly waived any rights related to or flowing from" the hearing officer's February 1 decision. Maj. Op. at 9. I agree that Bala waived his limited right to reinstatement--flowing from or "accorded" by that decision--but I cannot find where the Agreement explicitly says that he also waived any rights "related to" the decision. If such language existed, perhaps we could interpret the waiver provision to capture the Title VII claims as "related" (albeit distantly) to the final decision. See Related Definition, Merriam-Webster Dictionary, www.merriam-webster.com/dictionary/related (defining "related" as "connected by reason of an established or discoverable relation"). But in

15

actuality, such language is wholly absent, and the majority errs by reading it into the Agreement.

Second, the majority relies on Section 5 of the Agreement, which the majority says incorporates by reference Bala's October 2009 grievance and the February 1 decision. According to the majority, merely incorporating these documents by reference somehow expands the scope of the release to include all claims at issue in the October 2009 grievance. I disagree. Unlike Section 4, Section 5 does not define the scope of the waiver. Indeed, it says nothing about waiver at all. Rather, it states that the Agreement only applies to the grievance and the resulting final decision; not that the "waiver" itself applies to all claims raised in the grievance or adjudicated prior to the February 1 decision. In reading Section 5 as it does, the majority simply conflates Section 5 with the actual waiver language in Section 4.

Third, the majority relies on the Agreement's recitals, which describe the procedural posture of Bala's grievance and state that the Agreement's purpose was to "resolve this situation." J.A. 46. The majority concludes that the amorphous reference to a "situation" must mean all of Bala's claims, and thus expands the limited release into a general waiver. Again, I do not believe this is correct. As an initial matter, I do not read "situation" to unambiguously refer to all of Bala's

16

claims, as the majority does. Rather, it may just as easily refer to Bala's right to reinstatement based on the favorable February 1 decision. Thus, at best for the DCR's case, the recitals create an ambiguity about the scope of Bala's release. But even if there is an ambiguity, based on the inclusion of a vague general expression of intent, "no rational court could say that a general expression of intent trumps the specific terms that it introduces." Kenneth A. Adams, A Manual of Style for Contract Drafting 32 (3d ed. 2013); see also United Va. Bank/Nat'l v. Best, 223 Va. 112, 115 (1982) ("Under settled rules of construction, if the prefatory or recital language conflicts with the obligatory provisions of the contract, then the obligatory provisions must prevail."). And even if the recitals somehow suffice to create an ambiguity in the Agreement, we should construe it (at least for the purposes of the DCR's summary-judgment motion) against the drafter, the DCR. Sys. Research & Applications Corp. v. Rohde & Schwarz Fed. Sys., Inc., 840 F. Supp. 2d 935, 945 (E.D. Va. 2012) (citing Martin & Martin, Inc. v. Bradley Enters., Inc., 256 Va. 288, 291 (1998)).

Finally, validating such vagueness as sufficient to constitute waiver poses a real threat to employees' ability to pursue their rights under Title VII. Essentially, the majority equates the mere existence of a waiver provision to a full, exhaustive release of an employee's right to bring any pending

17

claims. If the Agreement at issue suffices for such a release, I am hard pressed to imagine what the majority would find inadequate. Indeed, as the majority opinion hypothesizes, the burden is now on employees to insist on language reserving any such rights, Maj. Op. at 10, even where an agreement does not reference Title VII claims and even where a waiver provision is otherwise narrow. In placing such a burden on employees, the majority simply disregards the basic tenet that "[w]aivers of federal remedial rights . . . are not lightly to be inferred." Torrez v. Pub. Serv. Co. of N.M., Inc., 908 F.2d 687, 689 (10th Cir. 1990) (per curiam) (citing Watkins v. Scott Paper Co., 530 F.2d 1159, 1172 (5th Cir. 1976)); see also Pierce v. Atchison Topeka & Santa Fe Ry. Co., 110 F.3d 431, 438 (7th Cir. 1997); Lyght v. Ford Motor Co., 643 F.2d 435, 441 (6th Cir. 1981).

For these reasons, I respectfully dissent.